**Madalyn Sue MELTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 569–84.**

Court of Criminal Appeals of Texas, En Banc.

May 23, 1990.

Paul N. Buchanan, Charles Carver, Beaumont, for appellant.

James S. McGrath, Dist. Atty., and John R. DeWitt, Asst. Dist. Atty., Beaumont, Robert Huttash, State's Atty., and Cathleen R. Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant was convicted of the offense of murder of her former lover. Punishment was assessed at ten years' confinement and a fine of $5,000.00.

On appeal, the Beaumont Court of Appeals found that appellant's oral statement was properly admitted into evidence in that appellant was not in custody at the time of the making of the statement. The Court of Appeals also found that appellant's oral statement was made after she voluntarily and knowingly waived her privilege against self-incrimination. *Melton v. State*, (Tex. App.–Beaumont, No. 09–83–057 CR, delivered March 21, 1984). We granted appellant's petition for discretionary review to examine these issues.

The facts were correctly summarized in the Court of Appeals' opinion:

"On [Friday] October 26, 1979, officers of the Port Arthur Police Department responded to a call reporting a dead body found on a construction road in Port Arthur. On arriving, the officers found the body of Terrell Marsh, which appeared to have been shot by a shotgun. A three-inch, Magnum, fired shotgun shell was recovered. A few days later [on Monday, October 29], Detectives Woods and Hughes went to the Port Neches plant of Texaco refinery, where appellant was employed, and asked her to accompany them to the police station in Port Arthur for questioning concerning the death of Terrell Marsh.

"The detectives testified appellant freely went with them to the station, that she was not a suspect at that point, and they wished to question her because they had information that suggested appellant may have been the last person to see the deceased alive. Later in the trial, appellant took the stand and did not dispute that she left the Texaco plant freely.

"The officers testified she was free to leave the police station in Port Arthur until at a point in the questioning when she implicated herself in the killing. The officers said appellant first denied any knowledge of Marsh's death, but after determined questioning, admitted that she had been having an affair with Marsh, a fellow Texaco employee, which terminated in March, 1979; that she told her husband, who became quite upset and at some point stated Marsh had to be killed. She and her husband drove to Lamar University in Port Arthur on the fatal night and found Marsh's parked car. The husband, Mike, got into the trunk of their car with the death weapon. When Marsh came out to his car, appellant told him to follow her, which he did, to the construction road. Mike, the husband, got out of the trunk, shot Marsh several times, then took Marsh's wallet to make it appear the motive was robbery. The wallet was later cut up and disposed of in a drainage ditch.

"After questioning at the police station, appellant signed a consent to have her home searched, and went with the officers to her home where they recovered the weapon which later testimony identified as the shotgun which fired the shell recovered at the scene. Appellant

was then taken back to the police station, a magistrate was called who gave her another warning and she was made aware of murder charges against her. She was asked to sign a written statement but refused after talking to someone on the telephone." Slip opinion pp. 2–3. [material in brackets added]

Prior to trial the trial court held a hearing on the voluntariness of appellant's statements to the officers and made the following findings of fact, inter alia:

"The defendant voluntarily accompanied Detective Woods and Hughes to the Port Arthur Police Department on October 29, 1979. The defendant was not in custody and was free to leave the police department at any time. Prior to any questioning, the defendant was admonished of the [Miranda warnings] ...

"The defendant understood all of her rights contained in the above warnings and freely and voluntarily gave the officers an inculpatory oral statement concerning the homicide of Terrell Marsh. The oral statement was made while the defendant was not in the custody of any police officers and the statement was made while the defendant was not being illegally restrained by the officers. The defendant was not in custody and was not a suspect until after she made the oral statement about this offense. The oral statement was not given as a result of any threats, promises, psychological coercion, or undue influence exerted on the defendant by any police officer. The oral statement was not given by the defendant as a result of any threat or promise concerning the charging or abstinence of charging the defendant's husband with the offense of capital murder. The defendant was not threatened, coerced or promised anything prior to giving the statement.

"The oral statement given by the defendant led the police officers to the finding of the shotgun, State's Exhibit # 2, which was secreted and previously undiscovered and was the instrument with which Terrell Marsh was killed."

The trial court made the following conclusions of law:

"The oral statement given by the defendant to Detective Woods is admissible as evidence before the jury under Article 38.22, Sec. 3(c). The State has proven beyond a reasonable doubt that the confession was voluntarily and freely given while the defendant was not in custody of any police officers."

█ In her petition, appellant argues that the facts show that appellant was in custody from the time she was taken from her place of employment. She argues that this "custody" is demonstrated by several facts:

(1) after the officers requested that she accompany them to the police station, she requested that she be allowed to take a loan payment book to her husband and the officers refused;

(2) she was not given the option of driving her own car to the police station;

(3) she was taken into the police station through a rear door which the detectives had to unlock and which "clicked" when it was closed behind her;

(4) she was escorted into an interrogation room and the door was closed behind her; and

(5) she was never informed that she was free to go.

█ Findings by a trial court should not be disturbed absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772 (Tex. Cr.App.1987). A review of the record shows that there is ample evidence to support the findings of the trial court.

The record shows that Detective Woods testified that they sought to interview appellant, not as a suspect in the case but because their investigation revealed that appellant was probably the last person to see the victim alive. He further testified that they picked up appellant at her place of employment at approximately 10:30 a.m. When appellant requested that she be allowed to take the credit union payment book to her husband so he could make a payment during the lunch hour, Woods informed her that she would be finished at

the police station by noon and could take it to her husband after the interview was completed. Woods testified that appellant did not have to accompany them to the police station. He further testified that although he did not inform appellant that she had the option of driving her own vehicle to the station had she made such a request, he would have allowed her to do so. During the interview, appellant did not request to talk with anyone but if she had made such a request, he also would have allowed her to do so. Woods testified that up until she admitted her culpability in the murder appellant was free to leave.

A person need not be under formal arrest in order to be in custody. In the past this Court has examined these types of cases in light of four factors: whether probable cause to arrest existed; whether the defendant was the focus of the investigation; the subjective intent of the police; and the subjective belief of the defendant. *Turner v. State,* 685 S.W.2d 38 (Tex.Cr. App.1985); *Ruth v. State,* 645 S.W.2d 432 (Tex.Cr.App.1979).

"We are unaware of any rule of law which forbids lawfully constituted officers of the law from requesting persons to accompany them, or of providing transportation to the police station or some other relevant place in furtherance of an investigation of a crime. Nor are we aware of any rule of law that prohibits police officers from voluntarily taking a person to the police station or some other relevant place in an effort to exonerate such person from complicity in an alleged crime. Nor are we aware of any rule of law which forbids one to reject such request. If the circumstances show that the transportee is acting only upon the invitation, request, or even urging of the police, and there are no threats, express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not then in custody. In other words, under those circumstances, such person has not 'been taken into custody or otherwise deprived of his freedom of action in any significant way.' *Miranda v. Arizona, supra.*" *Shiflet v. State,* 732 S.W.2d 622 (Tex.Cr.App.1985).

In *Shiflet* and *Dancy,* we went so far as to find that:

"Where a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, *and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime,* we are unable to hold that under the circumstances such a person is restrained of his freedom of movement. Under those circumstances, he is not in custody." *Dancy v. State, supra,* at p. 778. (emphasis added)"

Clearly, there was no custodial interrogation in the instant case where all the evidence reflects that up until the time appellant completed her oral statement, the officers did not suspect her of being implicated in the crime at all. All of the evidence shows that they were interviewing her only because they had reason to believe that she had been the last person to see the victim alive. Given all of the above, we find that both the trial judge and the Court of Appeals were correct in their findings that appellant was not in custody when she made her oral statement. *Penry v. State,* 691 S.W.2d 636 (Tex.Cr.App.1985); *Turner v. State, supra; Clark v. State,* 627 S.W.2d 693 (Tex.Cr.App.1982) (opinion on rehearing). Appellant's first ground for review is overruled.

Appellant also argues that the trial court abused its discretion by finding as a matter of fact that the oral statements made by appellant were made after a voluntary and knowing waiver of her privilege against self-incrimination. Appellant contends that the interrogation techniques used by the officers were so coercive that appellant was "forced" to confess.

 We find that we need not address the merits of this issue. Both the state and the federal privilege against self-incrimination are aimed at preventing compelled, involuntary testimonial incrimination by a person who has been taken into custody. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

*Thomas v. State,* 723 S.W.2d 696 (Tex.Cr. App.1986). Only in instances when a statement stems from custodial interrogation must the State demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination. *Miranda v. Arizona, supra.* Indeed the Supreme Court wrote in *Miranda:*

> "Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. State of Illinois,* 378 U.S. 478, 491, 84 S.Ct. 1758, 1765 [12 L.Ed.2d 977]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the factfinding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." *Miranda v. Arizona,* 384 U.S. at 477–478, 86 S.Ct. at 1629–1630.)

▇ When appellant made the statement the investigation had not yet shifted from the investigatory to the accusatory or custodial stage. As such, there was no compulsion and appellant's Fifth Amendment rights had not come into play. *Granviel v. State,* 723 S.W.2d 141 (Tex.Cr.App.1986). Thus we need not and cannot make a determination as to the voluntariness of any waiver of appellant's right against self-incrimination. *Guerrero v. State,* 605 S.W.2d 262 (Tex.Cr.App.1980). This ground for review is overruled.

The judgments of the Court of Appeals and the trial court are affirmed.

CLINTON, Judge, dissenting.

Appellant was convicted as a party to the offense of murder and punishment was assessed by the trial court at confinement of ten years and a fine of $5,000.00.

In the Beaumont Court of Appeals appellant contended that her confession and the murder weapon should have been suppressed in that they were the product of an illegal seizure of her person in violation of the Fourth Amendment to the United States Constitution. She also contended her confession did not follow a voluntary and knowing waiver of her privilege not to incriminate herself under the Fifth Amendment. The court of appeals held, in an opinion designated for publication but not yet reported, that appellant was neither "seized" for Fourth Amendment purposes, nor "in custody" in contemplation of the Fifth Amendment, and that her confession and consent to search her residence were therefore legally obtained. *Melton v. State* (Tex.App.—Beaumont, No. 09–83–057–CR, delivered March 21, 1984). We granted appellant's petition for discretionary review to examine these holdings. Tex.Cr.App. Rule 302(c)(3), now Tex.R.App. Pro., Rule 200(c)(3).

In my view appellant was illegally "seized" under the Fourth Amendment. Because both appellant's statement and her consent to search her home were gained by exploitation of the illegality of the seizure, I believe the trial court erred in failing to grant her motion to suppress. The Court need not address the Fifth Amendment issue.

### I.

Briefly, and in the light most favorable to the jury's verdict, the facts of the offense are as follows. Appellant, her husband, and Terrell Marsh, the deceased, all worked at the Port Neches plant of Texaco Refinery. Appellant and Marsh engaged in an extramarital affair which came to an end in March of 1979. On the night of October 25, 1979, appellant and her husband drove to a parking lot of Lamar University in Port Arthur, where Marsh was enrolled in an auto mechanics class. While her husband hid in the trunk of their car with a shotgun, appellant waited near Marsh's car. When Marsh emerged, appellant spoke to him briefly, and he then followed her in his car to a remote construc-

tion road. There he was gunned down by appellant's husband, who took Marsh's wallet to make it appear that robbery was the motive.[1] The body was found early the next morning.

Evidence was developed both at the pretrial hearing on the motion to suppress and at trial relating to the legality of appellant's detention.[2] Investigators quickly learned from other Texaco employees of appellant's affair with Marsh, and from conversations with students at Lamar University they gathered he had last been seen alive with appellant. On the morning of October 29, 1979, Detectives Woods and Hughes went to the Texaco plant to talk to appellant. Before ever approaching her, however, the detectives informed her supervisor they "were taking [appellant] to the station to talk to her[.]" Appellant was called to the "Number One Office Building" where the detectives told her "they were going to continue the investigation" and requested she accompany them to the station "to make it easier for them ... [f]or their paperwork." Appellant asked to be allowed to take "our payment book for the credit union" to her husband, which

would have taken "[m]ay be [sic] five minutes." According to appellant, the detectives told her she could not. At trial, Detective Woods denied this, and claimed he told her instead that she would not be detained long, and would have time to deliver the payment book to her husband before he needed it at lunch. Although Woods insisted appellant was considered only a witness at this time, not a suspect, he did not convey this fact to her. He testified he would not have "forced" appellant to accompany them.

The detectives drove appellant to the station in their car. She did not ask to take her own vehicle; neither did the detectives present that option to her. Once at the station, Detective Woods unlocked the back door to gain admittance. The door closed with an audible click, leading appellant to believe it locked again behind them. She was taken to "an interview room or small office" containing a desk and four chairs. The door was closed and appellant was directed to have a seat. Although appellant denied it, Detective Woods testified he Mirandized her immediately upon entering the room.[3] Appellant was questioned for

---

1. Appellant raised the affirmative defense of duress, see V.T.C.A. Penal Code, § 8.05, in that her husband forced her at shotgun point to facilitate commission of the offense. The trial court instructed the jury accordingly, but by its verdict of guilty the jury rejected that scenario.

2. Here, as in *Hardesty v. State,* 667 S.W.2d 130, at 133, n. 6 (Tex.Cr.App.1984), appellant "made an election to reopen the evidence" at trial pertaining to the issue of the legality of her detention for questioning. Although appellant sought no jury instruction on this specific issue, see n. 3, *post,* counsel for appellant did elicit facts relevant to the legality of her arrest during crossexamination of the detectives, and during appellant's own trial testimony. At several points during trial appellant requested the court to reconsider its ruling on her earlier motion to suppress on this basis. For this reason we need not follow "the general rule ... that we consider only evidence adduced at hearing on [the suppression] motion and do not resort to testimony subsequently elicited at trial: ..." *Hardesty,* supra. See also *Webb v. State,* 760 S.W.2d 263, at 273, n. 13 (Tex.Cr.App.1988).

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

 Appellant maintained she was not warned until much later, after she had given an oral state-

ment and signed a consent form authorizing the detectives to search her home. In its charge at the conclusion of the guilt/innocence phase of trial, the court instructed the jury not to consider appellant's oral statement unless it found she had been warned prior to giving it, and then, only if the jury should find she knowingly, intelligently and voluntarily waived those rights. In giving this instruction the trial court seems to have determined as a matter of law that at least as of the time appellant made her statement, she was "in custody" for Fifth Amendment purposes—even though in its findings of fact and conclusions of law mandated by Article 38.22, V.A.C.C.P., the trial court had determined that appellant's oral statement "was voluntarily and freely given while [appellant] was not in the custody of any police officers." (Appeal in this cause is from appellant's second trial on this offense. The conclusion of law that appellant was not "in custody" for Fifth Amendment purposes is odder still considering that the trial court granted a motion for new trial after appellant's first prosecution on the ground it had erroneously failed to instruct the jury during the first trial on the question of "voluntariness" of appellant's statement!) No instruction was given asking the jury to resolve a fact issue bearing on whether appellant was either "in custody" as contemplated by the Fifth Amendment, or "seized" under the Fourth Amendment.

an unspecified length of time before admitting knowledge of the offense. During this period food was brought to her, but she did not eat. When she indicated a desire for cigarettes, these were brought to her. She was escorted to and from the restroom. Detective Woods explained they were "just being courteous to her, keeping her from getting lost in the building." This explanation was never offered to appellant, however, who knew where the restroom was because they had passed it when first arriving at the station.

Up until the time she implicated herself in the offense, according to Woods, "had she expressed a desire to leave," and had she been "adamant" about it, she would have been free to go. Neither detective ever told her so. Detective Hughes testified on crossexamination:

"Q All right. Now, you never told [appellant] that she was free to go, did you?

A No sir, I did not.

Q And as a matter of fact, that would have been very poor interviewing technique to inform the interviewee that they were free to go at any time, would it not?

A Yes, sir.

Q Your purpose in getting her down there was to make her understand the gravity of the situation and to make her feel maybe not under arrest but certainly somewhat confined?

A Yes, sir."

Although appellant did not consider herself formally arrested, neither did she believe she "was at liberty to get up and leave[.]"

The tenor of the "interview" was that the detectives believed appellant had knowledge of the offense, that they had information contradicting her denials of an affair with Marsh, and that if robbery was not the true motive for the killing, as it had been made to appear, she should reveal that fact and thereby save her husband, whom they suspected, from a capital murder charge. Eventually appellant succumbed to the importunes of the detectives, giving a statement and signing a consent form to search her house. That search uncovered the murder weapon.

Both the statement and the shotgun were admitted at trial.

Pursuant to Article 38.22, § 6, V.A.C.C.P., the trial court entered findings of fact and conclusions of law bearing on the voluntariness both of appellant's statement, as a matter of due process, and of her waiver of Fifth Amendment rights prior to giving that statement. See *Griffin v. State,* 765 S.W.2d 422, at 428–29, & n. 11 (Tex.Cr.App.1989). To the extent the trial court's fact findings also have some bearing on the Fourth Amendment question whether appellant was "seized," they are as follows:

"The defendant voluntarily accompanied Detective Woods and Hughes to the Port Arthur Police Department on October 29, 1979. The defendant was not in custody and was free to leave the police department at any time. Prior to any questioning, the defendant was admonished of the [Miranda warnings] ...

"The defendant understood all of her rights contained in the above warnings and freely and voluntarily gave the officers an inculpatory oral statement concerning the homicide of Terrell Marsh. The oral statement was made while the defendant was not in the custody of any police officers and the statement was made while the defendant was not being illegally restrained by the officers. The defendant was not in custody and was not a suspect until after she made the oral statement about this offense."

That appellant was in fact Mirandized before questioning began is clearly supported by the testimony of the detectives, and we rightly accept that as an established fact for our analysis; likewise, that appellant was, whether she knew it or not, free to leave the police station at any time. However, that she "voluntarily" accompanied the detectives to the station, and "was not being illegally restrained by the officers" are more in the nature of conclusions of law than resolution of disputed or ambiguous facts.

The court of appeals invoked a mixture of state and federal decisions defining both "seizure" for Fourth Amendment purposes,

and "custody" under the Fifth Amendment. Believing the trial court's conclusion that appellant voluntarily accompanied the detectives to the police station was not an abuse of discretion, the court of appeals ruled "appellant was not 'seized' prior to the making of her oral confession." *Melton v. State*, Slip op. at 7.[4]

## II.

The issue before us is whether appellant was indeed "seized" under the Fourth Amendment. The State does not contend, nor does the record reflect, that Woods and Hughes had probable cause to believe appellant was involved in the murder of Marsh when they questioned her at the station. If the detectives "seized" her, that seizure therefore violated the Fourth Amendment. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). The initial burden is on appellant to show a seizure occurred. *Russell v. State*, 717 S.W.2d 7 (Tex.Cr.App.1986).

Under the Fourth Amendment a seizure has occurred "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, at 554, 100 S.Ct. 1870, at 1877, 64 L.Ed.2d 497, at 509 (1980) (Opinion of Stewart, J., joined by Rehnquist, J., announcing judgment of the Court); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr. App.1986). "The test is necessarily imprecise, ... designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v. Chesternut*, 486 U.S. at 573, 108 S.Ct. at 1979, 100 L.Ed.2d at 572. It is determinative neither that appellant was in fact free to leave at any time, nor that she in fact believed, albeit erroneously, that she was not. The question is whether she had "objective reason" to believe she was not free to leave. See *United States v. Mendenhall*, 446 U.S. at 555, 100 S.Ct. at 1878, 64 L.Ed.2d at 510.[5]

The trial court concluded appellant voluntarily accompanied the detectives to the police station, and that conclusion "should

4. The court of appeals did not discuss what at that time was the most recent pronouncement of the United States Supreme Court on the subject of Fourth Amendment "seizure," *viz: Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

5. Without acknowledging it is doing so, the majority imports a four-factor analysis courts have frequently used to make case-by-case determinations whether a suspect is in "custody" such that prophylactic Fifth Amendment *Miranda* protections attach. Op. at 325. Thus the majority asks: whether probable cause to arrest existed; whether the subjective intent of the police was to arrest; whether the suspect subjectively believed he was in custody; and whether the investigation had focused on the suspect. The United States Supreme Court has never invoked these factors in the context of determining Fourth Amendment "seizure," however, and it seems to me that at least three of the four factors fail to contribute meaningfully to that inquiry.

Once it is established that probable cause to arrest exists, the question whether a suspect has been "seized" under the Fourth Amendment becomes purely academic; for constitutional purposes the seizure is lawful. A finding that officers had probable cause effectively moots the seizure question. On the other hand, a finding that they did not have probable cause says nothing about whether the circumstances surrounding the interview would appear coercive, viewed objectively. Moreover, although the subjective intent of the police and the subjective belief of the suspect may both be relevant, certainly neither can be regarded as dispositive of the question whether a suspect had "objective reason" to believe he was not free to leave.

Whether investigation has focused upon a particular person seems another way of asking whether officers have a discernible motive, less than or different from probable cause, to hold that person. Suffice it to say that the officers' investigation in this cause had clearly alighted upon appellant and her husband. They may not have believed appellant shared culpability for the murder, but it is clear from the interrogation itself that they suspected, and with good reason, that she would know something about the offense. They had every reason to expect appellant to be evasive, and, as Detective Hughes practically admitted, every motivation to create an environment in which her evasiveness could be overborne.

not be disturbed absent a clear abuse of discretion." *Dancy v. State,* 728 S.W.2d 772, at 777 (Tex.Cr.App.1987); *Livingston v. State,* 739 S.W.2d 311, at 328 (Tex.Cr. App.1987). The court of appeals here found no such abuse. However, in deciding whether the record supports a trial court's determination that an accused voluntarily consented to submit to investigative detention, an appellate court should not consider simple acquiescence to a police request alone to be dispositive. Apparent consent is but one factor in the totality of the circumstances, and one to be viewed guardedly. In this context the en banc Fifth Circuit has observed:

" ... a court should closely scrutinize whether [the totality of] circumstances reveal the presence of any coercion. If such coercion was present, the court must hold that a reasonable person would believe that his freedom had been limited. * * * The more intrusive to an individual's freedom complying with a request would be, the greater should be the skepticism with which a court treats assertions that an individual consented to a request. * * * We do not wish to shackle police absolutely to a rigid and awkward rule requiring them to inform individuals that they are free to not accompany police to an office, but we do believe that only exceptionally clear evidence of consent should overcome a presumption that a person requested to accompany an agent to an office no longer would feel free to leave."

*United States v. Berry,* 670 F.2d 583, at 597, 598 (CA5 1982). Both the trial court and the court of appeals seem to have relied exclusively upon appellant's apparent consent in concluding she was not seized. As I see it, however, what the record reveals of "the coercive effect of police conduct, taken as a whole," *Michigan v. Chesternut,* 486 U.S. at 573, 108 S.Ct. at 1979, 100 L.Ed.2d at 572, belies the notion that appellant consented voluntarily.[6]

Whether or not they would have "forced" her to go, that Detectives Woods and Hughes were intent on questioning appellant at the police station is evident from the fact that they told her supervisor so in categorical terms. Appellant was then summoned to the company office, where she was likely to experience pressure not only from the police, but also from her employer, to cooperate. The detectives indicated "they were going to continue the investigation," without informing appellant she had a choice in the matter.[7] Even viewing the evidence in the best light, they at least discouraged appellant from delivering the credit union payment book to her husband, who also worked at the plant, and was only minutes away. Under these circumstances it cannot be said the "request" to accompany the detectives to the station, an intrusion falling just short of formal custodial arrest, was purged of its pre-

---

**6.** Borrowing from the Fifth Amendment "custody" analysis found in *Shiflet v. State,* 732 S.W.2d 622, at 628 (Tex.Cr.App.1985), the Court in *Dancy v. State,* supra, remarked:

"If the circumstances show that the transportee is acting only upon the invitation, request, or even the urging of the police, and there are no threats, express or implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not then in custody." 728 S.W.2d at 778. What should be noted is that the surrounding circumstances dictate whether compliance is truly upon no more than "the invitation, request, or ... urging of the police," *sans* coercion. *United States v. Berry,* infra. That an officer asked, and a suspect or witness complied, is not alone determinative.

**7.** In *United States v. Mendenhall,* supra, Justice Stewart, joined by Justice Rehnquist, observed

that his conclusion that no seizure occurred was "not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry[.]" 446 U.S. at 555, 100 S.Ct. at 1878, 64 L.Ed.2d at 510. Nevertheless, the plurality in *Florida v. Royer,* supra, considered it a relevant circumstance that officers requested Royer to accompany them to an interrogation room "without indicating in any way that he was free to depart." 460 U.S. at 501, 103 S.Ct. at 1326, 75 L.Ed.2d at 239. This is a relevant, although once again not by itself determinative, circumstance; one to be considered with all others in assessing whether a reasonable person would have felt free to leave. See *Clark v. State,* 627 S.W.2d 693, at 700 (Tex.Cr.App.1982) (Opinion on State's motion for rehearing); *Eisenhauer v. State,* 678 S.W.2d 947, at 955 (Tex.Cr.App.1984); also *United States v. Berry,* 670 F.2d at 598.

sumptively imperative aspect.[8] *United States v. Berry*, supra. I would accordingly discount the trial court's conclusion that appellant voluntarily consented to be transported to the police station and subjected to custodial interrogation. See *Florida v. Royer*, 460 U.S. at 501–502, 103 S.Ct. at 1326, 75 L.Ed.2d at 239.

Once at the station appellant was ushered into a small, closed interrogation room, alone with two detectives. She was directed to have a seat, and then subjected to what the court of appeals characterized as "determined questioning," as well as accusations she was lying to cover up her own affair with Marsh and knowledge of her husband's guilt in the murder. While in his own mind Hughes may have fetched food and cigarettes and escorted appellant both to and from the restroom as a matter of "courtesy," as an objective matter it would have appeared as a form of restraint to a reasonable person in appellant's shoes. Indeed, Hughes admitted it had been his purpose to make appellant feel "confined."

It is also significant that Woods administered *Miranda* warnings as soon as they entered the interrogation room. That Woods should demonstrate caution by exercising those procedural safeguards *Miranda* dictates to secure the Fifth Amendment privilege against custodial self-incrimination must surely be considered an objective reason for appellant to believe she had been "taken into custody or otherwise deprived of his freedom of action in [some] significant way." 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. Given this indicium of Fifth Amendment "custody," a reasonable person would be well warranted in the belief that he was not at liberty to go—at least absent an explanation by the administering officer to the recipient at the time of the warning that he was simply

exercising abundant caution, and that no restraint was intended. See *Dancy v. State*, supra, at 783, n. 2 (Clinton, J., dissenting). No such explanation was offered to appellant here.

Finally, though appellant may have been *in fact* free to leave, that Woods testified she would have to have been "adamant" in her desire to do so is yet another indication she was not "*treated* as if [she] was free to leave." *Penry v. State*, 691 S.W.2d 636, at 645 (Tex.Cr.App.1985). (Emphasis supplied.)

By the time appellant gave her statement in this cause, her circumstances were much like Royer's:

"What had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in a police interrogation room, where the police, unsatisfied with previous explanations, sought to confirm their suspicions. * * * At least as of that moment, any consensual aspects of the encounter had evaporated...."

*Florida v. Royer*, 460 U.S. at 503, 103 S.Ct. at 1327, 75 L.Ed.2d at 240.

Taken as a whole, the facts justify no conclusion but that appellant had been "seized" for Fourth Amendment purposes when she gave her statement; and that by that time the degree of intrusiveness was such as to require a showing of probable cause to arrest. *Dunaway v. New York*, and *Hayes v. Florida*, both supra. Both the trial court and the court of appeals erred in holding otherwise. Moreover, I would be compelled to hold that appellant's statement and consent to search were obtained by exploitation of the illegality of her seizure.[9] *Dunaway v. New York*, supra.

Accordingly, I would reverse the judgment of the court of appeals and remand

---

8. Unlike the defendants in *Dancy v. State*, supra, and *Ussery v. State*, 651 S.W.2d 767 (Tex.Cr.App. 1983), appellant in no way "thrust [herself] upon the scrutiny of the investigating officers[.]"

9. Ordinarily I would be predisposed to remand a case in this posture to the court of appeals for it to address for the first time the question whether taint of the illegal detention had attenu-

ated by the time evidence was obtained. See e.g., *Brick v. State*, 738 S.W.2d 676, at 681 (Tex. Cr.App.1987). Because the instant case has been pending on this Court's docket since 1984, however, and because I believe resolution of the question of taint, *vel non*, is controlled by *Dunaway v. New York*, supra, I would dispose of it summarily here.

**332**

the cause to the trial court for a new trial.[10] Because the Court does not, I respectfully dissent.

TEAGUE, MILLER and CAMPBELL, JJ., join this opinion.

---

**10.** Instead the majority today "finds" that the lower courts "were correct in their findings that appellant was not in custody when she made her oral statement." Even assuming I believed the record supported a finding that appellant was not "seized," which is the *proper question* under the Fourth Amendment, see n. 5, *ante,* I would eschew language indicating that this

Court acts as a super-appellate factfinder. Ordinarily, rather than decide factual correctness of a lower court ruling, appellate courts properly determine only whether that ruling has a rational foundation in the record. Indeed, as I understand it, that is what an appellate court means when it opines that a trial court has not abused its discretion. *Dancy v. State,* supra.