GAMBLE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-457-CR

BYRON LYNN GAMBLE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

OPINION

------------

I. Introduction

Appellant Byron Lynn Gamble appeals his conviction and fifty-one-year sentence for aggravated robbery with a deadly weapon.  Appellant contends in his first point that the trial court erred by admitting two unrecorded oral statements he made to police officers while in custody but before he had been Mirandized.  In his second point, appellant contends that the evidence was factually insufficient to establish that he used or exhibited a firearm while committing the robbery.  We affirm.

II.  Background Facts

On July 14, 2004, as James Burnett showered in his apartment, two men knocked at the door.  When Laura Wood, a friend Burnett had recently met on the Internet, asked who the men were, one man responded “June Bug.”  Burnett instructed Wood to crack the door and identify the men.  As Wood cracked the door, the masked men, armed with a pistol and tire tool, forced their way into the apartment and began searching the premises.

Burnett heard Wood scream and quickly emerged from the bathroom, still naked and wet.  The robbers ordered Burnett and Wood into the bathroom.  When Burnett cracked the door to see what was going on, one of the robbers hit Burnett with the tire tool, driving him back into the bathroom.  Eventually, the robbers went into the bathroom, held a gun to Burnett’s head, led him into the bedroom, and ordered Burnett to open a safe.  After Burnett opened the safe, the robbers stuffed everything in the safe, including Burnett’s coin collection, into a pillowcase and pushed him face-down into a recliner next to the bed.  The robbers beat Burnett with a gun and the tire tool.  While the robbers were beating Burnett he retrieved a handgun that he had previously placed in the recliner cushions and hid it in his stomach area. 

Burnett then ran into the bedroom closet and slammed the door.  Burnett immediately spun around, opened the closet door, and fired a shot.  The robbers ran as Burnett, still naked, chased them out of his apartment and down the building’s stairs while firing his gun.  Burnett fatally wounded one robber, whom police later identified as Gerald Marshall.  Marshall’s accomplice escaped.

On July 19, 2004, a man interested in selling coins contacted Bill Walker, an employee of Heritage Rare Coin Galleries in Dallas.  Shortly thereafter, two men arrived at the gallery and tried to sell a coin collection matching the one recently stolen from Burnett.  Walker, who remembered reading on the Internet that similar coins had recently been stolen, immediately contacted the Dallas Police Department.  At trial, Walker identified appellant as one of the men.

Eventually, two Dallas police officers arrived at Heritage Rare Coin Gallery.  The officers patted down the two men, but did not arrest or handcuff them.  When Officer Michael Dana questioned appellant about the coins, appellant stated that he got the coins from Marshall, who had died of gunshot wounds.  At some point during or after this conversation, Officer Dana asked appellant to sit on the floor and wait while he used Walker’s computer to look up the Internet article regarding the Burnett robbery.  After learning of the robbery and determining that the Grand Prairie Police Department had jurisdiction, Officer Dana contacted them and ultimately turned appellant over to them when they arrived.

The Grand Prairie police took appellant to the Tarrant County Jail on July 23, 2004.  While he was booking appellant, Lieutenant Eddie Herriage noticed that appellant’s right thigh and foot were injured.  When Lieutenant Herriage questioned appellant about the injuries, appellant said he had been shot on July 14, 2004, but had not sought medical attention for fear of arrest.

 
III.  Admissibility of Unrecorded Oral Statements

In his first point, appellant contends that the trial court erred by admitting two unrecorded oral statements he made to police officers while he was in custody but before he had been Mirandized.  Specifically, appellant argues that the trial court should not have admitted his statement to Officer Dana that Marshall gave him the coins or his statement to Lieutenant Herriage that he did not seek medical attention for his injury for fear of arrest. 

A.  Standard of Review

The standard of review for a trial court’s admission of evidence is abuse of discretion, and wide discretion is afforded to the trial judge.  
Theus v. State
, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992); 
Miller v. State
, 196 S.W.3d 256, 267 (Tex. App.—Fort Worth 2006, pet. filed)
.
(footnote: 1)  The trial court’s decision should be reversed on appeal only if there is a showing of a clear abuse of discretion.  
Theus
, 845 S.W.2d at
 881; 
Miller
, 196 S.W.3d at 267.  Only if the court’s decision falls outside the “zone of reasonable disagreement” has it abused its discretion.  
Rankin v. State
, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh’g); 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).   

B.  Applicable Law

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment privilege against self-incrimination.  
Miranda v. Arizona
, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966); 
Miller
, 196 S.W.3d at 264.  Additionally, article 38.22 of the code of criminal procedure 
provides that no statement made as a result of a custodial interrogation shall be admissible against the accused in a criminal proceeding unless, among other things, prior to the giving of the statement, specific statutory warnings are administered to the accused.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.22 (Vernon 2005).

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.  
Miranda
, 384 U.S. at 444, 86 S. Ct. at 1612;
 Miller
, 196 S.W.3d at 267.
  If an investigation is not at the accusatorial or custodial stage, a person’s Fifth Amendment rights have not yet come into play and the voluntariness of those rights is not implicated.  
Melton v. State
, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990).  

Four factors relevant to determining whether a person is in custody are the (1) probable cause for arrest, (2) subjective intent of the police, (3) focus of the investigation, and (4) subjective belief of the defendant.  
Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).  Under 
Stansbury v. California
, factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of police officers; the custody determination is therefore based entirely upon objective circumstances.  511 U.S. 318, 322-23, 114 S. Ct. 1526, 1528-29 (1994); 
Dowthitt
, 931 S.W.2d at 254.  

Four general situations in which a suspect’s detention may constitute custody are (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest
(footnote: 2) and law enforcement officers do not tell the suspect that he is free to leave.  
Dowthitt
, 931 S.W.2d at 255; 
Miller
, 196 S.W.3d at 264-65.  In
 the first through third situations, the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention.  
See Dowthitt
, 931 S.W.2d at 255
.
 (citing 
Stansbury
, 511 U.S. at 322-23, 114 S. Ct. at 1528-29).  Concerning the fourth situation, the officer’s knowledge of probable cause must be manifested to the subject, and such manifestation could occur if information sustaining the probable cause is related by the officer to the suspect or by the suspect to the officers.  
Id.
; 
see Ruth v. State
, 645 S.W.2d 432, 436 (Tex. Crim. App. [Panel Op.] 979). 

Here, Officer Dana testified that upon arriving at the store, he asked appellant who he was and told him that the coins he was attempting to sell might be stolen.  Before Officer Dana asked appellant any other questions, appellant stated that he had gotten the coins from a friend who had who just died.  Officer Dana then asked appellant who his friend was and what he had died of.  Appellant responded that the friend was Marshall and that “he had been shot.”  At some point during or immediately after this brief exchange, Officer Dana asked appellant and his friend to sit on the floor while he found out where the offense occurred and if appellant’s coins were linked to the offense Walker had called him about.  He did not handcuff appellant at this point.

In his brief, appellant asserts that any reasonable person would have felt “the level of restraint associated with formal arrest” when Officer Dana took him aside, made him sit on the floor, and guarded him until the Grand Prairie police arrived.  However, the evidence at trial shows that Officer Dana asked only these questions before asking appellant to sit on the floor.  Further, Officer Dana testified that appellant was not under arrest, but that he only initially questioned appellant because he had very limited information and wanted to inform appellant as to why the police were there.  Officer Dana’s inquiry regarding appellant’s identity and who gave him the coins constituted general questioning in the fact-finding process.  
See Wallace v. State
, 813 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (holding that an officer’s initial questioning of a potential check forger served only to help the officer understand the facts of the situation).  Probable cause to arrest did not arise until Officer Dana asked these questions and observed the Internet article.  
See Parker v. State
, 710 S.W.2d 146, 147 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (holding that a defendant was not in custody when an officer did not arrest him, but also did not allow him to leave until determining whether he had stolen two checks). 

Under these circumstances, even though appellant was not free to leave until Officer Dana completed his investigation, appellant was not in custody.  
See Wallace
, 813 S.W.2d at 751
; Parker
, 710 S.W.2d at 147.  The law permits an officer a reasonable time to delay potential witnesses or suspects to determine the facts of a given situation, and in this case, to find out whether there was some reasonable explanation for appellant’s possession of the coins.  
See Parker
, 710 S.W.2d at 147
. 
 If such a reasonable explanation had been forthcoming, appellant would have been spared the indignity of an arrest.  
See Wallace
, 813 S.W.2d at 751.  Appellant’s theory of law would require an officer to pre-emptively arrest before giving a citizen an opportunity to explain himself.   

Therefore, because appellant was not in custody, the statements he made to Officer Dana were admissible.  
See Parker
, 710 S.W.2d at 147
. 
 Consequently, the trial court did not clearly abuse its discretion by overruling appellant’s objection regarding this testimony.

Appellant also asserts that the trial court erred by admitting appellant’s statement to Lieutenant Herriage during the police booking process explaining that he did not seek medical attention for his injury for fear of arrest.  However, appellant did not object to the admission of this testimony at trial.  To preserve an issue for appellate review, a defendant must timely and specifically object.  
Tex. R. App. P.
 33.1(a);
 Gutierrez v. State
, 36 S.W.3d 509, 510-11 (Tex. Crim. App. 2001); 
Duran v. State
, 163 S.W.3d 253, 256 (Tex. App.—Fort Worth 2005, no pet.).  By not objecting, appellant did not preserve this issue.  

Accordingly, we overrule appellant’s first point.   

IV.  Factual Sufficiency

In his second point, appellant alleges that the evidence is factually insufficient to support the finding that he 
used or exhibited a firearm while committing the offense.  

     A.  Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, No. PD-469-05, 2006 WL 2956272, at *8 (Tex. Crim. App. Oct. 18, 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 2006 WL 2956272, at *8, 10; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the 
verdict.  
Watson
, 2006 WL 2956272, at *10.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.” 
 Id
.  We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id
.  We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.” 
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id
. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground.  
Goodman v. State
, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); 
Johnson
, 23 S.W.3d at 7.
 

B.  Applicable Law and Analysis

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for whom he is criminally responsible, or by both.  
Tex. Penal Code Ann.
 § 7.01(a) (Vernon 2003).  Further, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist in committing the offense, he solicits, encourages, directs, aids, or attempts to aid the other person in committing the offense.  
Id
.
 § 7.01(a)(2).  Whether the accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by examining the actions of the accused that show an understanding and common design to commit the offense.
  King v. State
, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000).  

A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.  
Tex. Penal Code Ann.
 § 29.03(a)(2) (Vernon 2003).  A deadly weapon is a firearm or anything that in the manner of its use or intended use is capable of causing serious bodily injury or death. 
Id.
 § 1.07(a)(17) (Vernon Supp. 2006)
.  An affirmative finding may be entered against a defendant who never used or brandished a deadly weapon during the commission of an offense, so long as he (1) was a party to an offense where a deadly weapon was used or exhibited and (2) knew such a weapon would be used or exhibited.  
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2) (Vernon Supp. 2006); 
see Dowdle v. State
, 11 S.W.3d 233, 235 (Tex. Crim. App. 2000).

Appellant cites 
Williams v. State 
to argue that, although the use of a firearm is not necessarily an essential element of aggravated robbery, the State assented to its “essentiality” by averring in the indictment that the deadly weapon was a firearm.  980 S.W.2d 222, 228 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  Appellant does not dispute the fact that he was a party to the robbery or that Marshall exhibited or used a firearm during the robbery.  Appellant only asserts that the evidence was insufficient to support a finding that he personally used or exhibited a firearm.   

Even if appellant never actually touched the handgun during the robbery, the evidence showed that he was a party to the robbery and knew that Marshall was going to use or exhibit the handgun in the commission of the robbery.  
See 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2); 
Dowdle
, 11 S.W.3d at 235.  Both Burnett and Wood testified that one robber used a handgun throughout the commission of the robbery.  Specifically, after pushing Burnett’s front door open, one robber held the gun to Wood’s head and said, “Bitch, I will shoot you.”  Then, the same robber put the gun in Burnett’s face and told him to go into the bathroom.  On multiple occasions, when Burnett cracked the bathroom door to see what the robbers were doing, one of the robbers pointed the gun at him and said, “Keep the damn doors closed.”  After the robbers found Burnett’s safe, one robber held the gun to his head and demanded that he open it.  Once the robbers gathered the contents of the safe, one robber hit Burnett’s face and the back of his head with the butt of the handgun.  Burnett testified that after he retrieved his own gun and chased the robbers out of his apartment, he saw one robber lying face-down on the ground.  Noticing that the robber still had a handgun, Burnett kicked it aside and emptied its clip.

The evidence also showed that Marshall had deliberately armed himself for the purpose of using the weapon if necessary to accomplish the robbery.  Appellant certainly discovered that Marshall had armed himself when Marshall first held the gun to Wood’s head, if not before.  Further, Marshall continued to use the gun throughout the entire robbery until his ultimate demise.  Based on these circumstances, a trier of fact could rationally conclude that appellant knew of Marshall’s intention to use the weapon during the robbery.  
See Dowdle
, 11 S.W.3d at 238 (holding that defendant knew of his co-conspirator’s intention to use a weapon in committing a crime when he fled with the co-conspirator after the co-conspirator shot a police officer); 
Johnson v. State
, 6 S.W.3d 709, 713 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d) (holding that a defendant knew that her accomplice was planning to use a weapon to commit a robbery because she played key roles in planning and carrying out robbery).

Giving due deference to the fact-finder’s determinations, 
“particularly those determinations concerning the weight and credibility of the evidence,” we hold that the evidence was factually sufficient to support the jury’s finding that appellant 
(1) was a party to an offense in which a deadly weapon was used or exhibited and (2) knew such a weapon would be used or exhibited.  
See 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § 3g(a)(2); 
Johnson
, 23 S.W.3d at 9
; 
see also Dowdle
, 11 S.W.3d at 235
.
  
Accordingly, we overrule appellant’s second point.

Having overruled appellant’s two points, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL A: LIVINGSTON, HOLMAN, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: November 16, 2006

FOOTNOTES
1:
Appellant filed a motion to suppress the statements he made to Officer Dana.  The trial court denied this motion.  In his brief, however, appellant does not challenge the trial court’s denial of his motion to suppress; he asserts only that the trial court erred by admitting the statements into evidence over his objection at trial.  Therefore, clear abuse of discretion is the appropriate standard of review.  
See Theus
, 845 S.W.2d at 881.

2:
Probable cause to arrest exists when, at that moment, the facts and circumstances within the knowledge of the arresting officer or of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing that a particular person has committed or is committing a crime.  
Torres v. State
, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005);
 Jones v. State
, 493 S.W.2d 933, 935 (Tex. Crim. App. 1973).