**Affirmed and Opinion Filed November 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00517-CR

### ARIANNA LINDSEY, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-1171158-J**

## MEMORANDUM OPINION
Before Justices Lang, Evans, and Whitehill
Opinion by Justice Whitehill

Lindsey hit her baby's head on the kitchen counter to get him to stop crying and caused the child permanent brain damage. She subsequently pled guilty to serious bodily injury to a child with a deadly weapon pursuant to an agreement that punishment would be assessed between eight and twenty-two years' imprisonment. The trial court followed the agreement and sentenced Lindsey to eighteen years' imprisonment.[1]

In a single appellate issue, Lindsey argues the trial court abused its discretion by admitting an audio tape of an "interrogation" because the "mid-stream" *Miranda* warnings did not cure the taint of a prior unwarned interrogation.

---

[1] Lindsey did not waive her right to appeal as part of the agreement.

Because we conclude there was no custodial interrogation, the trial court did not err in overruling Lindsey's objection that the audio tape was inadmissible because her statements were involuntary. Moreover, the same evidence had already been admitted without objection. We thus affirm the trial court's judgment.

## I. Background

During the hearing on punishment, Detective Glen Slade testified without objection. He said that he received a call from Children's Hospital about a child who suffered severe head injuries. Lindsey, the mother, was already at the hospital when Slade arrived so he took her into an interview room to talk to her. The interview was recorded by audio recorder.

Lindsey initially told him that she put the baby to bed in his crib at about nine o'clock the night before and found him crying on the floor at about nine the next morning. The baby would not stop crying, so she woke her mother up. They noticed that the baby had a knot on his head, so they called an ambulance. At that point, Slade knew that the child was in ICU and had a cracked skull and subdural hemorrhaging, so he did not think this version of the events explained the child's injuries.

Two doctors came into the room where Lindsey was being interviewed because they were concerned that the child might have liver damage and had some questions. They described the injuries to Lindsey and told her it was not possible for the child to have sustained these injuries by falling out of a crib.

The doctors asked if she had squeezed the baby. Lindsey then said she was in the kitchen making a bottle for the baby and he had squirmed around and she dropped him on the floor. When the doctors told her it would take a lot more force than that to cause the injuries in question, Lindsey then stated that she was holding the baby in the kitchen and hit the baby's head on the counter as she turned.

One doctor explained to Lindsey how hard of an impact there would need to be to cause the kind of damage the child had. Slade handed Lindsey a notebook and asked her to show them what she did. Lindsey picked up the notebook and slammed it on the table, and then said she hit the baby's head on the counter because it wouldn't stop crying.

The doctors left the room, came back in with a doll, and asked Lindsey to demonstrate what she did. Lindsey stood and hit the doll's head on the table. She said, "After I hit his head on the counter, he didn't stop crying, so I did it again and he didn't stop crying." The doctors asked Lindsey about holding the baby tight, and she said yes, she held him really tight.

After Lindsey gave this version of events, Slade asked her to write a statement. She agreed, and was informed of her rights before doing so. Lindsey's statement was admitted into evidence without objection.[2]

Lindsey's statement says:

> I was trying to get my baby to stop crying but he wouldn't so I hit his head on the counter about two times then after I did that I called 911.

On the same day he interviewed Lindsey, Slade visited the apartment where the crime occurred. He took pictures of the apartment, and these pictures were admitted into evidence without objection. The detective observed that there was no crib in the apartment as Lindsey had initially claimed.

After the detective testified about his interview of Lindsey, the State moved to admit the audio tape of the interview into evidence. Defense counsel objected based on "voluntariness," which the trial court overruled.

Slade said that he spent less than an hour interviewing Lindsey. Initially, when she told him the child was in the room with two other people, they were the primary suspects, not her.

---

[2] Defense counsel initially objected, but subsequently withdrew the objection.

He just viewed Lindsey as a mother who was concerned about her child. Slade did not become suspicious until the fourth version of the story—when Lindsey said she hit the baby's head on the counter. Detective Slade recalled that he had even asked her if she was trying to protect someone. After Lindsey told him her final version of the story and he became suspicious, he gave her the *Miranda* warnings.

## II. Analysis

### 1. Standard of Review

The trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses in determining the voluntariness of a confession. *See Delao v. State,* 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). An appellate court affords great deference to a trial court's ruling and will overturn the decision "only where a flagrant abuse of discretion" is shown. *Id.* The determination of whether a confession is voluntary must be made by examining the totality of the circumstances. *Id.; see also Woodruff v. State,* 330 S.W.3d 709, 732(Tex. App.—Texarkana 2010, pet. ref'd).

### 2. Custodial Interrogation

The State may not use a defendant's statements stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Article 38.22 of the code of criminal procedure also precludes the use of statements that result from a custodial interrogation without compliance with its procedural safeguards. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014). Before an investigation reaches the accusatorial or custodial stage, however, a person's Fifth Amendment rights have not come into play, and the voluntariness in waiving those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990).

Custodial interrogation is questioning by law enforcement officers after a person has been taken into custody or deprived of his or her freedom of action in any significant way. *Miranda*, 384 U.S. at 444; *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). To determine whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010). A person is in custody only if, under the circumstances, an objectively reasonable person would believe that his or her freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996).

There are at least four general situations where a suspect's detention may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he or she cannot leave, (3) when law enforcement creates a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Id*. at 255; *McCulley v. State*, 352 S.W.3d 107, 115–16 (Tex. App.—Fort Worth 2011, pet. ref'd). In the first three situations, the restriction on freedom of movement must amount to a degree associated with arrest rather than investigative detention. *Dowthitt*, 931 S.W.2d at 255; *McCulley*, 352 S.W.3d at 116. The defendant bears the initial burden of proving that a statement was the product of "custodial interrogation." *Herrera*, 241 S.W.3d at 526.

Thus, the State has no burden at all unless "the record as a whole clearly establishe[s]" that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. *Id*.

**3.      Were the Unwarned Statements a Product of Custodial Interrogation?**

Lindsey contends that she made a trial objection that she "was subjected to custodial interrogation prior to being read [her] rights." The record, however, shows no such objection. Instead, Lindsey objected to the admission of the audio tape "based on the voluntariness" of it. Although Lindsey asserts that the questions posed by the detective "were clearly designed to elicit a confession," she fails to identify any specific facts to support her claim. She also does not explain why the interview constituted custodial interrogation such that a mid-stream *Miranda* warning was ineffective. But the record does not affirmatively demonstrate that Lindsey's interview before the *Miranda* warnings was a custodial interrogation; thus, the voluntariness of her pre-warning statements does not come into play.

The interview lasted less than an hour and was conducted in the hospital. Lindsey was not taken there to be interviewed, she was there when the detective arrived. There were doctors present and participating in the discourse at various times, and the fact that these individuals came in and out of the room suggests an informal setting. The record is silent as to whether the room had windows or more than one door. There is no evidence that the door was locked, or that Lindsey was informed that she couldn't leave.

Lindsey was not under arrest, and there is nothing to suggest that her freedom of movement was restricted in any way or that she was not free to terminate the interview and leave the room at any time. Detective Slade testified that when he began the interview, Lindsey was only a witness—a mother who was concerned about the welfare of her child. Even when Lindsey gave conflicting versions of events, the detective said he did not suspect Lindsey. Instead, he thought she might be covering up for someone. The interview was conversational and non-confrontational, and there is no evidence that Lindsey was denied food, water, or use of the facilities.

It was not until Lindsey gave her final version of events and said that she hit the baby's head on the counter because he wouldn't stop crying that she became a suspect. She was *Mirandized* immediately thereafter. Because the record does not support a conclusion that Lindsey was subjected to custodial interrogation, the voluntariness of her statements before receiving her *Miranda* warnings is not implicated. Therefore, the trial court did not abuse its discretion in admitting the audio tape of the interview.

Moreover, even had the admission of the audio tape been error, Lindsey was not harmed because substantially the same evidence was admitted without objection. *See Hicks v. State*, 860 S.W.2d 419, 430-31 (Tex. Crim. App. 1993); *Leday v. State*, 983 S.W.2d 713, 717-18 (Tex. Crim. App. 1998). In his testimony, Detective Slade was permitted to summarize the interview with Lindsey without objection. Lindsey's statement was then admitted without objection. Therefore, even if the audio tape was improperly admitted, there is no reversible error. *Id.*

Lindsey's issue is overruled. The trial court's judgment is affirmed.

Do Not Publish
TEX. R. APP. P. 47
140517F.U05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ARIANNA LINDSEY, Appellant

No. 05-14-00517-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F-1171158-J.
Opinion delivered by Justice Whitehill.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 4, 2015.