David Allen RUTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 55903.

Court of Criminal Appeals of Texas, Panel No. 1.

May 16, 1979.

Rehearing Denied March 1, 1983.

Mike DeGeurin, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and R.P. Cornelius, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ROBERTS and W.C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

On the retrial of this cause after we reversed and remanded (*Ruth v. State,* 522 S.W.2d 517 (Tex.Cr.App.1975)), a jury again found the appellant to be guilty of murder with malice and assessed his punishment at 15 years' confinement. The appellant raises several grounds of error which turn on our determination of whether he was in custody when he was questioned by police officers.

When this questioning took place in 1973, V.A.C.C.P., Article 38.22 (1967 Texas Acts, chapter 659, section 23) generally made inadmissible the oral confession of a defendant made while the defendant was in the custody of an officer. *Smith v. State,* 514 S.W.2d 749 (Tex.Cr.App.1974). There are some exceptions to this rule, but the State does not argue that any of them apply in this case. A second rule restricting the admissibility of confessions made while a defendant is in custody is the constitutional requirement that the defendant have been warned of his right to counsel and his privilege against self-incrimination. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This rule also prohibits proof of a defendant's refusal to answer questions while he is in custody. *Miranda v. Arizona,* supra. If the appellant was "in custody" when he was questioned, all these rules were violated by the admission in evidence of his answers and his refusals to answer. "[W]e find it difficult to formulate a general rule to distinguish custodial interrogation from non-custodial interrogation. A case by case approach in which the evidence is reviewed . . . is deemed necessary." *Ancira v. State,* 516 S.W.2d 924, 927 (Tex.Cr.App.1974).

In this case, the appellant did not deny shooting the victim; his defenses were accident and absence of malice. The appellant did not testify. The only other surviving eyewitness testified that the appellant and the victim were struggling for the gun when the fatal shot was fired. The State challenged this version of the shooting by presenting the medical examiner's opinion and the appellant's oral confession which was made at a hospital.

The appellant accompanied the victim to the hospital, where two police officers arrived in response to a radioed "call" from the dispatcher. The officers saw the unconscious victim being "worked on" in an emergency room. Nurses told the officers that one of the boys who brought the victim to the hospital was in a small (eight by ten feet) waiting room near the emergency room. The officers, who were in their usual uniforms and carrying pistols, went to the waiting room. The appellant and his brother were there. The appellant had blood on the front of his pants. The appellant was using the telephone; the officer was not permitted to say to whom the appellant was talking. After less than a minute, the appellant "got off the phone" and sat down. He did not appear to be very nervous or upset "too much." (At this point we should note that only one of the two officers ques-

tioned the appellant. The other officer was present and heard the questioning of the appellant, but he did not testify about anything the appellant said, nor did he give any testimony that was relevant to admissibility. The relevant testimony came from one officer.)

The officer asked what happened. The appellant said something to the effect, "I had rather not say." The officer said, "We have got a boy out here shot. I need to find out what happened to him."[1] The officer did not know that the appellant had shot the victim. After hesitating a little bit, the appellant started telling the officer about the shooting. He said, "The best of my knowledge, I shot him but it was an accident. I didn't do it on purpose," or something like that. The appellant also said, "I had come home from work and I am real hot tempered and somebody moved my bike," or did something to it; "I am really hot tempered, . . . I am real hot tempered and got the gun and shot him."

While the appellant and the officer were talking, a doctor came into the room and said, "I am Dr.—whatever his name was— and I am treating this boy and I need to know what he was shot with." The appellant refused to tell him at first. The doctor said something to the effect, "That boy's life is in danger and I need to save it. I need to know what he was shot with and what angle and what distance." The appellant then "put his hand like he was trying to get his direction," turned in his chair, and said, "He was sitting like this, and I shot at him like this [indicating by pointing] with a 357, point blank."

The officer kept talking to the appellant. He asked where the appellant got the gun. The appellant wouldn't tell the officer anything else, and said words to the effect that he wished to terminate the interview. The officer said, "You have to go downtown with me if you don't [sic] refuse to tell me." The appellant refused to say anything.

The officer could not remember every specific word that the appellant said. Out

of the presence of the jury, the officer said that the questioning happened three years ago and that he couldn't remember everything that happened.

The officer gave other testimony out of the presence of the jury. He said that he imagined that he and his partner were at the hospital for a total of 10 or 15 minutes. When he began the questioning, the officer did not know or suspect who had "done the shooting." In response to leading questions on redirect examination, the officer agreed that his intention was to investigate the shooting and not to make an arrest or to elicit a confession. Because he had "brought the boy that was shot in" and "knew something about the situation," the appellant "had to make some kind of a statement to us" before the officer would let him go. If the appellant had tried to leave the room without making a statement, the officer would have detained him. The officer didn't suspect the appellant "as being the one doing the shooting until I was questioning him and after he hushed, he wouldn't tell me any more statement. . . ." In other words, we are to believe that the officer didn't suspect that the appellant had shot the victim after the appellant said he didn't want to say what had happened; he didn't suspect the appellant had shot the victim after the appellant said he shot the victim; he didn't suspect the appellant had shot the victim after the appellant explained why he shot the victim; he didn't suspect the appellant had shot the victim after the appellant refused to answer the physician's questions; he didn't suspect the appellant had shot the victim after the appellant demonstrated how he shot the victim. Only when the appellant indicated that he wouldn't talk any more did the officer purportedly decide that he should begin to suspect the appellant and place him under arrest. Only then would the protections of the Fifth Amendment and V.A.C.C.P., Article 38.22, be required, according to the State. "We cannot permit the *Miranda* principles to be so easily frus-

---

**1.** Out of the presence of the jury, the officer testified that he also explained to the appellant that he "had to find out the information for the report."

trated." *Windsor v. United States,* 389 F.2d 530, 534 (5th Cir.1968).

■ Even if there is such a thing as a "formal" arrest,[2] it is not necessary that an accused be under formal arrest for *Miranda* rights to arise. *Newberry v. State,* 552 S.W.2d 457 (Tex.Cr.App.1977); *Ancira v. State,* 516 S.W.2d 924 (Tex.Cr.App.1974). "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*" *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) (emphasis supplied). See *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). A similar phrase, "in the custody of an officer," was used in former Article 38.22, V.A. C.C.P. (1967 Texas Acts, chapter 659, section 23).[3]

■ In deciding whether a particular interrogation was custodial, courts must consider numerous factors, according to the circumstances of the case. Annotation, 31 A.L.R.3d 565, 578 (1970). The subjective intent of the officer is one such factor, but courts will disregard an officer's testimony that a defendant was not a suspect and not in custody if the testimony is belied by the facts of the case. *Newberry,* supra; *Ancira,* supra. "The courts cannot be expected to decide cases solely on the basis of self-serving statements by the defendant or the interrogating officer." Smith, "The Threshold Question in Applying *Miranda:* What Constitutes Custodial Interrogation?", 25 S.C.L.Rev. 699, 713 (1974).

■ Among the other factors which may be considered, one which "has consistently impressed our court [is] whether or not the focus of the investigation has finally centered on the defendant." *Newberry,* supra, at 461; *Ancira,* supra, at 927. Another factor which may be considered is whether there was probable cause to arrest. *Newberry,* supra, at 461; *Ancira,* supra, at 926. On these factors, the officer's testimony is belied by the facts. It is impossible to believe that the officer did not have probable cause to arrest, or that the investigation had not focused on the appellant, after the appellant admitted that he shot the victim, explained his motive, and reenacted the offense. The appellant must have been in custody by that time, but the officer gave no *Miranda* warnings. Instead, he continued to question the appellant about where he got the gun. Evidence of the defendant's refusal (not once, but twice) to answer this question was admitted before the jury. That error violates not only the directive of the Fifth Amendment (*Miranda v. Arizona,* supra; see also *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)), but also the well-settled law of this state (e.g., *Cardwell v. State,* 156 Tex.Crim. 457, 243 S.W.2d 702 (1951)) that the refusal to answer questions by a person in custody may not be used as evidence against him (see Texas Constitution, Article I, Section 10).

By any test, the appellant must be considered to have been in custody by the end of the interrogation. Because the appellant's refusal at that point to answer the question about the gun was admitted into evidence, the judgment must be reversed. But this cannot be the end of our task, for at a retrial the State again may offer evidence of the appellant's answers (and refusals to answer) in the earlier parts of the interrogation. We must determine the admissibility of this evidence by deciding at what point the questioning became a custodial interrogation.

The State reminds us that statements made during an investigatory process and prior to arrest are not subject to the rules of *Miranda* and V.A.C.C.P., Article 38.22, and it argues that the entire interrogation was a non-custodial investigation. The only

---

**2.** "A person is arrested when he has been actually placed under restraint or taken into custody. . . ." V.A.C.C.P., Article 15.22. No form of words is required. See *Hardinge v. State,* 500 S.W.2d 870, 872–873 (Tex.Cr.App.1973).

**3.** As amended by 1977 Texas Acts, chapter 348, section 2, V.A.C.C.P., Article 38.22 now refers to statements "made as a result of custodial interrogation."

authority cited by the State is *Williams v. State,* 524 S.W.2d 705 (Tex.Cr.App.1975). In that case officers went to the appellants' house to execute warrants of arrest. After entering, the officers asked the appellants who they were and whether they lived there. In the present case, the interrogation involved many more questions, the questions were directed toward facts which were more incriminating, and the questioners persisted after the appellant refused to answer. Compare Annotation, 31 A.L.R.3d 565, 578 (1970). The cases cited in *Williams* are likewise distinguishable. The distinguishing factors of this case are more indicative of the atmosphere of compulsion which *Miranda* sought to alleviate.

We also consider the factors mentioned in *Newberry,* supra, and *Ancira,* supra: subjective intent of the officer, subjective belief of the appellant, focus of the investigation, and probable cause to arrest. In this case, the officer had the subjective intent to restrain the appellant until he made a statement. The officer's statement that he had to find out what happened was calculated to produce in the appellant a subjective belief that he was required to answer. The appellant's statement that he had shot the victim immediately focused the investigation on him and furnished probable cause to believe that he had committed an offense. After that time, the continued interrogation must be considered a custodial one. The appellant's oral statements (and refusals to speak) after that time are not admissible under the rules of *Miranda v. Arizona,* supra, and V.A.C.C.P., Article 38.22.

The judgment is reversed and the cause is remanded.