MEMORANDUM OPINION

No. 04-05-00870-CR

Armando ALEMAN,

Appellant

v.

The STATE of Texas,

Appellee

From the 187th Judicial District Court, Bexar County, Texas

Trial Court No. 2004-CR-5727A

Honorable Raymond Angelini, Judge Presiding




Opinion by: Alma L. López, Chief Justice



Sitting: Alma L. López, Chief Justice

 Phylis J. Speedlin, Justice

 Rebecca Simmons, Justice



Delivered and Filed: January 19, 2007



AFFIRMED



 A jury found Armando Aleman guilty of murder and assessed punishment at life in prison. On appeal, Aleman contends
that the trial court erred in admitting his confession and excluding statements made by his wife. We affirm. 





Background 

 On May 26, 2004, police officers discovered the body of Celia Martinez in the shower of her home. Martinez died as a
result of neck injuries and blunt trauma to her head. When the first police officer arrived at the scene, Aleman and his wife,
Theresa Bracamontes, were in the home with Martinez's mother and brother. Aleman and Bracamontes rented a
second-floor portion of Martinez's home. Martinez's mother and brother had initially arrived at the house to take Martinez
to an appointment, and they entered the home when Martinez failed to answer the door. They discovered blood throughout
the home and could not find Martinez. Martinez's mother found Aleman and Bracamontes in their second-floor bedroom. 
She saw blood in their room and noticed they were cleaning their hands. She asked them where her daughter was, and they
did not answer. At that point, she told her son to call the police, and she went downstairs and blocked the door so Aleman
and Bracamontes could not leave before the police arrived. 

 When police officers arrived at the scene, Aleman had blood on his ear, pants, socks, and shoes. An evidence technician
collected Aleman's shoes. A homicide detective asked Aleman if he would go to the police station and give a statement,
and Aleman said he would. Aleman did not have a car, and the detective arranged for a police officer, Officer Barcenas, to
give Aleman a ride to the station and a ride back after Aleman gave his statement. Bracamontes and Martinez's mother and
brother also went to the station to give statements. 

 Homicide Detective Curtis Walker interviewed Aleman in an interview room at the police station for approximately two
hours. A little more than half-way through the interview, Aleman admitted that he and his wife murdered Martinez. At the
conclusion of the interview, Officer Barcenas drove Aleman to a location of Aleman's choosing. Aleman was arrested some
time later. Admissibility of Confession Aleman contends that the trial court erred in denying his motion to suppress his
confession because the confession was: (1) involuntary and (2) the result of custodial interrogation conducted without
Miranda warnings or the warnings set forth in article 38.22 of the Texas Code of Criminal Procedure. See Miranda v.
Arizona, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). We review a trial court's ruling on a
motion to suppress evidence for an abuse of discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). At
a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their
testimony. Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). Therefore, we afford almost total deference to the
trial court's determination of historical facts supported by the record, especially when the fact findings are based on an
evaluation of the witnesses' credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We
review de novo the court's application of the law to the facts. Id. 

A. Voluntariness

 We determine the voluntariness of a confession by examining the totality of the circumstances. Creager v. State, 952
S.W.2d 852, 856 (Tex. Crim. App. 1997). A confession will not be considered involuntary absent police coercion causally
related to the confession. Colorado v. Connelly, 479 U.S. 157, 164 (1986); Alvarado v. State, 912 S.W.2d 199, 211 (Tex.
Crim. App. 1995); Walker v. State, 842 S.W.2d 301, 303 (Tex. App.-Tyler 1992, no writ). The ultimate question is whether
the defendant's will was "overborne" by police coercion. Creager, 952 S.W.2d at 856. In answering this question, we may
consider various relevant factors, including the length of detention, incommunicado or prolonged detention, denying a
family access to a defendant, refusing a defendant's request to telephone a lawyer or family, and physical brutality. Nenno v.
State, 970 S.W.2d 549, 557 (Tex. Crim. App. 1998), overruled on other grounds, State v. Terrazas, 4 S.W.3d 720 (Tex.
Crim. App. 1999).

 At the suppression hearing, the trial court heard testimony from Officer Barcenas, who drove Aleman to and from the
police station, and Detective Walker, who interviewed Aleman at the station. The State also offered Aleman's videotaped
interview. The record shows that the interview lasted approximately two hours. Before the interview began, an officer
asked Aleman if he wanted anything to drink and then brought him a soda. Aleman was not handcuffed at any point during
the interview. Walker repeatedly told Aleman that he was free to leave at any time. Aleman did not at any time ask to
leave, make a phone call, or see anyone. There is also no evidence that any officer physically abused Aleman or promised
him anything in return for a confession. Considering the totality of the circumstances, we conclude that the trial court did
not err in finding Aleman's confession voluntary. 

B. Custodial Interrogation

 The Miranda warnings and article 38.22 of the Texas Code of Criminal Procedure apply only to statements made as a
result of custodial interrogation. See Miranda, 384 U.S. at 478-79; Tex. Code Crim. Proc. Ann. art. 38.22 § 5 (Vernon
2005) (nothing in article precludes admission of statement made by accused if statement does not stem from custodial
interrogation). We apply a two-step analysis to determine whether an individual is in custody. First, we examine the
circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint of freedom of
movement to the degree associated with a formal arrest. Stansbury v. California, 511 U.S. 318, 322 (1994). Second, we
consider whether, given the circumstances, a reasonable person would have felt free to terminate the interrogation and
leave. Thompson v. Keohane, 516 U.S. 99, 112 (1995). A custody determination depends on the objective circumstances of
the interrogation, not the subjective views of the officer or the person being questioned. Stansbury, 511 U.S. at 323; Garza
v. State, 34 S.W.3d 591, 593 (Tex. App.-San Antonio 2000, pet. ref'd). Therefore, the subjective views of the officer or
suspect are irrelevant to a custody determination unless those views are manifested by words or actions of the officer that
would lead a reasonable person to believe he was not free to leave. Stansbury, 511 U.S. at 325. 

 At least four general situations may constitute custody: (1) when the suspect is physically deprived of his freedom of action
in any significant way; (2) when a law enforcement officer tells the suspect he cannot leave; (3) when law enforcement
officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly
restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to
leave. Dowthitt v. State, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). For the first three situations, the restriction upon
freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. Id. For
the fourth situation, the officers' knowledge of probable cause must be manifested to the suspect, which could occur if
information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Id. The
record shows that Aleman went to the police station willingly and that Bracamontes and Martinez's mother and brother also
went to the station to give statements. An officer drove Aleman to the station because Aleman did not have a car. Aleman
sat in the front seat of the officer's car and was not handcuffed. Detective Walker testified that he treated Aleman as a
witness, not a suspect. Walker did not search Aleman or handcuff him at any point in the interview. During the interview,
Walker informed Aleman several times that Aleman was not under arrest, did not have to be there, and was free to leave at
any time. Near the beginning of the interview, Walker asked Aleman whether he understood he was not under arrest, and
Aleman answered "yeah." After about forty-five minutes, Walker again told Aleman he was not under arrest and that he
was free to go. Aleman indicated that he needed some shoes because his shoes had been taken as evidence at the crime
scene. Walker responded that officers would need to take his shirt and pants, too, but that they would give him some
clothes to wear out of the station. A few minutes later, Walker took a break and left Aleman alone in the interview room. 
Soon after returning, Walker informed Aleman of several items of evidence the police had discovered, including bloody
clothing in Aleman and Bracamontes's bathroom, bloody footprints on the stairs of Martinez's home, and a statement
allegedly made by Aleman to his wife that his wife did not have to worry about Martinez anymore. Walker then asked
Aleman again whether he understood he did not have to be there. Aleman nodded his head and said "uh-huh." Walker told
him that he could go at any time, and Aleman again nodded his head and said "uh-huh." 

 Walker then told Aleman that he knew Aleman committed the crime and that it was up to him to decide whether he wanted
to explain why he did it. Shortly thereafter, Aleman admitted that he and his wife beat Martinez to death. The entire
interview lasted about two hours. Aleman did not make any requests to leave, make a phone call, or go to the restroom at
any point in the interview. After the interview ended, Walker told Aleman that an evidence technician would take his shirt
and pants and provide him with something to wear. When Aleman asked about getting shoes, Walker said that Aleman
could get shoes when he got home. Aleman emptied his pants' pockets, and a technician took Aleman's pants and outer
shirt. Aleman kept his undershirt, and the technician gave him another pair of pants. Officer Barcenas then gave Aleman a
ride to a place of Aleman's choosing. The record does not reveal whether Aleman was given a pair of shoes before he left
the station. Aleman was not arrested until some time later. 

 On this record, we conclude that a reasonable person in Aleman's position would not have believed that he was under
restraint to the degree associated with a formal arrest. Aleman willingly went to the police station, was interviewed for only
two hours, and was not handcuffed or searched. He never asked to speak with a lawyer or anyone else, and he never asked
to leave or go to the restroom. It is true that Walker informed Aleman of the evidence against him and that a short time
later, Aleman admitted he and his wife beat Martinez, thus manifesting probable cause for his arrest. (1) See Dowthitt, 931
S.W.2d at 256 (suspect's statement that he was present during murder, especially in light of his earlier evasions and
inconsistencies, gave police probable cause to arrest); Ruth v. State, 645 S.W.2d 432, 436 (Tex. Crim. App. 1979) (suspect's
statement that he shot victim immediately focused investigation on him and furnished probable cause he had committed
offense). However, a manifestation of probable cause is a factor in determining custody only if law enforcement officers do
not tell the suspect he is free to leave. Dowthitt, 931 S.W.2d at 255. Here, Walker informed Aleman several times that
Aleman was not under arrest and was free to leave, including reiterating the admonitions immediately after he informed
Aleman of the evidence against him. After Aleman confessed, Walker continued to imply that Aleman could leave, stating
that Aleman could get his shoes from his house after he left. Aleman did in fact leave after the interview and was not
arrested until some time later. Given the circumstances, we hold that Aleman was not in custody at the time of his
confession. Because Aleman was not in custody, the failure to advise him of his rights did not render his statements
inadmissible under either Miranda or article 38.22. 

Admissibility of Statements Made by Bracamontes

A. Excited Utterance

 Aleman contends that the trial court erred in excluding incriminating statements made by Bracamontes because the
statements qualify as excited utterances under Rule 803(2) of the Texas Rules of Evidence. (2) See Tex. R. Evid. 803(2). 
We review the admissibility of hearsay statements under an abuse of discretion standard. Zuliani v. State, 97 S.W.3d 589,
595 (Tex. Crim. App. 2003). An abuse of discretion occurs only when the trial court's ruling is so clearly wrong as to lie
outside the zone of reasonable disagreement. Id. 

 Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to
prove the truth of the matter asserted. Tex. R. Evid. 801(d). Hearsay is not admissible unless it fits into an exception
provided by a statute or rule. See Tex. R. Evid. 802. An excited utterance, one of the exceptions, is a statement relating to a
startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. 
SeeTex. R. Evid. 803(2); Zuliani, 97 S.W.3d at 595. The critical determination is whether the declarant was still dominated
by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. Zuliani, 97 S.W.3d at 596. 
In other words, we must determine whether the statement was made under such circumstances as would reasonably show
that it resulted from impulse rather than reason and reflection. Id. Factors we may consider include the length of time
between the occurrence and the statement, the nature of the declarant, whether the statement is made in response to a
question, and whether the statement is self-serving. Apolinar v. State, 155 S.W.3d 184, 187 (Tex. Crim. App. 2005). 

 Aleman argues that the trial court should have allowed Detective Walker and Detective Estrada to testify about statements
made to them by Bracamontes because the statements were excited utterances. Bracamontes's statements were made during
her interview at the police station at some point in the hours following Martinez's murder. Aleman argues that
Bracamontes's statements were made "shortly after" the murder, but the record does not reflect how much time passed
between the murder and the statements. The record shows that Bracamontes stayed at the scene for some period of time and
that she later went to the police station. The second officer to arrive at the crime scene testified that he observed Aleman
and Bracamontes outside the house and that Bracamontes appeared fine, did not appear injured, and did not complain of any
injuries. A homicide detective who arrived at the scene some time later testified that he observed Bracamontes sitting down
and crying. He testified that when Aleman asked Bracamontes whether the police could search their bedroom, Bracamontes
stated that she did not care because "everybody hate[d] her now." Detective Estrada interviewed Bracamontes at the police
station. Estrada testified that the interview lasted a little more than two hours and that Bracamontes had a "fluctuating
affect" during the interview. Estrada testified that Bracamontes was sobbing and breathing heavily in the beginning of the
interview, then became normal, then became frustrated and flustered again, and then returned to normal. Estrada stated:
"When [Bracamontes] wanted to - she was able to turn her emotion on and off relatively easy; it became transparent."

 Given the evidence of Bracamontes's changing emotional condition and the lack of evidence establishing that she was still
dominated by the emotions, excitement, fear, or pain of the murder when she made the statements, we conclude that the trial
court's ruling excluding the statements is within the zone of reasonable disagreement. Therefore, the trial court did not
abuse its discretion in excluding Bracamontes's statements.

B. Statements Against Interest 

 In his final point of error, Aleman argues that the trial court erred in excluding Bracamontes's incriminating statements
because the statements qualify as statements against interest under Rule 803(24) of the Texas Rules of Evidence. See Tex.
R. Evid. 803(24). To complain about a trial court's evidentiary ruling, a party must have first made his complaint to the trial
court in a manner that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the
complaint. See Tex. R. App. P. 33.1(a)(1)(A). It is not enough to tell the trial court that the evidence is admissible; the
proponent of the evidence must tell the judge why the evidence is admissible. Reyna v. State, 168 S.W.3d 173, 177 (Tex.
Crim. App. 2005). If the trial court never has the opportunity to rule upon the proponent's appellate rationale, the argument
cannot be raised on appeal. See id. at 178. For evidence to be admissible under a hearsay exception, the proponent of the
evidence, not the trial court, must specify which exception to the hearsay rule he relies upon or how the evidence is not
hearsay. Id.

 Here, Aleman never presented the trial court with the opportunity to rule on whether Bracamontes's statements qualified as
statements against interest. When Aleman's questions to Detective Estrada initially drew hearsay objections from the State,
Aleman made an offer of proof but did not present the trial court with an applicable hearsay exception or argue that the
testimony was not hearsay. Later, when Aleman attempted the same line of questioning with Detective Walker, the State
again made hearsay objections, and Aleman raised only the excited utterance exception in response. At no point during
either detective's testimony did Aleman raise the exception for statements against interest as a basis for admitting
Bracamontes's statements. Because Aleman failed to offer this argument to the trial court, he waived his right to appeal on
these grounds. Accordingly, we overrule Aleman's final point of error.

Conclusion 

 We affirm the trial court's judgment. 



 Alma L. López, Chief Justice

Do Not Publish 

1. Probable cause to arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting
officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing
that a particular person has committed or is committing a crime. Jones v. State, 493 S.W.2d 933, 935 (Tex. Crim. App.
1973). 

2. Bracamontes made the following incriminating statements: that she hit Martinez on the head three times with "a stick"
(which police later determined to be a metal expandable baton); that she poked Martinez with a knife; and that she and
Aleman were both responsible for Martinez's murder.