State=s Motion for Rehearing Overruled; Reversed and Remanded; Opinion
of November 28, 2006 Withdrawn and Substitute Majority and Concurring Opinions
filed August 30, 2007








 

State=s Motion for Rehearing Overruled; Reversed and
Remanded; Opinion of November 28, 2006 Withdrawn and Substitute Majority and
Concurring Opinions filed August 30, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00098-CR

____________

 

ANGEL RESENDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 960,399

 



 

S U B S T I T U T
E  M A J O R I T Y  O P I N I O N

We overrule the State=s motion for
rehearing, withdraw our previous opinion, and issue this substitute opinion in
its place.








Appellant, Angel Resendez, pleaded guilty to the murder of
Amanda Garza, and the trial court assessed punishment at ninety-nine years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  Appellant
appeals his conviction in one point of error.  He asserts the trial court
abused its discretion by denying the motion to suppress his unwarned videotaped
confession to murder.  The issue in this case is whether appellant was in
custody during his interrogation on September 2, 2003, thus triggering his
right to Miranda[1]
warnings.  Because we conclude appellant was in custody, we reverse and
remand for a new trial.  

                          Factual and Procedural
Background

On August 30, 2003, appellant and a group of friends,
including complainant Amanda Garza, drank a considerable amount of alcohol at a
nightclub.  That night, after the nightclub closed, the group went to a hotel
and continued drinking.  Appellant called his friend, Steve Perez, because
appellant and Garza needed a ride home.[2] 
By the time Perez arrived, Garza was extremely intoxicated and got into the
backseat of Perez=s car.  Perez asked appellant for
permission to have sex with Garza, and appellant approved.  Perez asked
appellant to drive them to appellant=s house, and then
Perez would take Garza home.  Perez then climbed into the backseat and
proceeded to have sex with Garza.  After several minutes, Garza began screaming
and striking Perez, and she told appellant to pull over and let her out, which
he did.  By this time, appellant was near his home.  Garza got out of the car,
began to walk away, and shouted obscenities at Perez, threatening to report the
assault to the police.   








The exact sequence of events following Garza=s exit from the
vehicle is unclear because appellant gave two different statements to police
regarding the events that evening.  In the first statement, appellant claimed
he insisted on walking Garza to his home, but Perez did not want her to tell
anyone what happened.  Perez followed appellant and Garza in the car for a few
feet, got out of the car, and shot Garza once in the head.  Perez threatened to
shoot appellant and told appellant to get in the car.  Perez then shot Garza
three more times.  Appellant claimed to have no prior knowledge of a gun in the
car.  In the second statement, however, appellant claimed he did know about the
gun because Perez told appellant to remove the gun from the glove compartment
and place it under the seat, so that if they were stopped by police on the way
home, the police would not see the gun when they retrieved their proof of
insurance.  In the second statement, appellant described his actions after
Garza got out of the car:  he got angry; Afreaked;@ grabbed the gun
from under the seat; and shot Garza once in the head.  Perez then took the gun
from appellant and shot Garza three more times.  Appellant later claimed he
changed his story the second time because he was being threatened by Perez and
Perez=s friends and
thought that if he took partial responsibility for what happened, his family
would be protected.  

Appellant gave his first videotaped statement on August 31,
2003.  Prior to this first videotaped statement, police gave appellant Miranda
warnings.  After the first statement, appellant agreed to stage a recorded
phone conversation with Perez.[3] 
Police then became suspicious of appellant=s involvement
because Perez implicated appellant in the shooting.  On September 2, appellant
agreed to take a polygraph test, which he took and failed.  At this point, he
was questioned and videotaped a second time, and he eventually confessed to
shooting Garza with the first of the four shots fired.  During the second
videotaped statement, appellant was not given any Miranda warnings. 
Appellant was arrested sometime later that day for Garza=s murder.

Appellant twice moved to suppress his second unwarned
statement, once on September 19, 2003, and again on October 29, 2004.  After
filing the second motion to suppress but before his trial, appellant testified
against Perez at Perez=s trial on November 3, 2004.  Appellant
testified about what he said to police in his two statements.  Appellant
testified that the reason he changed his story and admitted shooting Garza was
because he felt threatened by Perez, but his first statement was factually
correct. 








At the suppression hearing on November 8, appellant argued
his second statement should be suppressed because it was not given voluntarily
and police did not give him Miranda warnings preceding a custodial
interrogation.  The State argued in response that Miranda warnings were
not required because the interrogation was not custodial, and the statement was
given voluntarily.  Perez=s and appellant=s trials both took
place in the same trial court and were presided over by the same judge.  At
appellant=s suppression hearing, the trial court took judicial
notice of appellant=s testimony in Perez=s trial,
specifically that he did not hear appellant testify the statement was not given
voluntarily.  The trial court denied appellant=s motion to
suppress.  Appellant then pleaded guilty and agreed to a pre-sentence
investigation (PSI).  After reviewing the results of the PSI and victim impact
testimony, the trial court assessed punishment at ninety-nine years= confinement.

                                                    Discussion

I.        Waiver

As a preliminary matter, the State contends appellant
waived his right to appeal the trial court=s denial of the
motion to suppress appellant=s second videotaped statement when
appellant pleaded guilty.  We disagree.  Both bargaining and
non-bargaining defendants can appeal rulings on written, pre-trial motions and
jurisdictional issues.  Monreal v. State, 99 S.W.3d 615, 620 (Tex. Crim.
App. 2003); see Tex. R. App. P. 25.2. 
A valid waiver of appeal, whether negotiated or non-negotiated, will prevent a
defendant from appealing without the consent of the trial court.  Monreal,
99 S.W.3d at 622.  In determining whether defendants should be bound to their
waivers of appeal, a court first must determine whether the waiver is valid,
which requires a finding that the waiver was knowingly, voluntarily, and
intelligently made.  Id. at 621.  However, a waiver of a right to appeal
is invalid, and therefore not made knowingly, voluntarily, and intelligently,
if it is entered before the defendant is aware of the consequence of his plea. 
See Tufele v. State, 130 S.W.3d 267, 270 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).     








Here, appellant twice filed a written pre-trial motion to
suppress his second videotaped statement.  After the trial court denied
appellant=s motion, appellant pleaded guilty.  When making his
plea, appellant signed a plea form which purportedly waived his right to
appeal.  The context of that form implies there was an agreement as to
punishment, which there clearly was not; rather, appellant only agreed to have
punishment evidence presented to the trial court via a PSI report.  Further,
the trial court certified appellant=s right to appeal
and noted this is not a plea bargain case.  See Alzarka v. State, 90
S.W.3d 321, 324 (Tex. Crim. App. 2002) (holding a trial court that certifies a
defendant=s right to appeal directly contradicts and rebuts any
presumption raised by the terms of the boiler-plate language in a plea form
signed by the defendant and reflects the defendant did not waive appeal). 
Appellant did not knowingly, voluntarily, and intelligently waive his right to
appeal because punishment had not yet been assessed.  Thus, appellant has not
waived his right to appeal the point of error he raises in this appeal. 

II.       Miranda
Warnings Required During Custodial Interrogation

In appellant=s argument on the
merits, he contends the trial court erred in denying his motion to suppress his
second videotaped statement.  Appellant makes multiple arguments in support of
his contention.

A.  Standard of
Review








When reviewing a trial court=s suppression
ruling, we give almost total deference to the trial court=s determination of
historical facts that the record supports.  Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  We afford the same degree of deference to a
trial court=s ruling on mixed questions of law and fact when the
resolution of the ultimate question turns on an evaluation of credibility and
demeanor of witnesses.  Id.  We review de novo mixed questions of
law and fact when the resolution of the issue does not turn on an evaluation of
credibility and demeanor.  Id.  During a suppression hearing, the trial
court is the sole judge of the credibility of witnesses and the weight to be
given their testimony.  Wyatt v. State, 23 S.W.3d 18, 23 (Tex. Crim.
App. 2000).  We must sustain the trial court=s ruling if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  Villareal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996).

We will not disturb the trial court=s findings if they
are supported by the record.  Id.  If the trial court does not make
explicit findings of fact, we will assume the trial court made implicit
findings of fact that support its ruling as long as those findings are
supported by the record.  Montanez v. State, 195 S.W.3d 101, 106 (Tex.
Crim. App. 2006). 

During the suppression hearing, appellant=s counsel argued
to the trial court  appellant may have voluntarily gone to the police station
to talk to police, but at some point while there, his interrogation turned
custodial and was no longer voluntary, requiring police to give appellant Miranda
warnings.  Appellant=s counsel argued that after appellant took
and failed a polygraph examination,  he was interrogated at some length.  Then,
appellant and police moved to another room where the second videotaped
statement was made, which appellant contends only contains questions geared
toward verifying the earlier confession.  The parties then argued to the trial
court whether it should consider appellant=s prior testimony
in Perez=s trial,
specifically where the prosecutor asked appellant if his statement was given
freely and voluntarily, whether he was shown the exit door of the room, or
whether he was offered drinks or coerced by police.  The trial court took
judicial notice of appellant=s testimony from Perez=s trial and made
it part of the record in this case.  No further discussion occurred about the
statement allegedly given during the period in between the polygraph
examination and the second videotaped statement, and no other evidence was
admitted during the hearing.  The trial court denied the motion to suppress, 
stating it did not recall hearing any testimony by appellant that his
confession was not voluntarily made.  

B.  Judicial Notice of Prior Testimony








In the
issue raised before this court, neither party addresses in their appellate
briefs whether the trial court=s decision to take judicial notice of appellant=s prior testimony in Perez=s trial was appropriate.  The parties
only ask this court to consider whether appellant=s confession was voluntary or
custodial without regard to Miranda warnings.  Because no other evidence
was admitted at the suppression hearing, we first consider whether the trial
court correctly took judicial notice of appellant=s prior testimony.[4] 


During
the suppression hearing, the trial court declared it was using appellant=s prior testimony in Perez=s trial to rule on whether to grant
or deny appellant=s motion to suppress.  The parties presented no other
evidence at the hearing.  During Perez=s trial, appellant was only partially
represented by counsel, and from the record of his testimony at the prior
proceeding, which was included in our appellate record, appellant would not
re-enter the courtroom after a break in testimony because his counsel was not
present.  The trial court then instructed the bailiff to bring appellant into
the courtroom to continue his testimony regardless of whether his trial counsel
was present because appellant was a witness during that proceeding.  Appellant
did not make a complaint on the record at Perez=s trial or during his trial for this
offense, but that decision by the trial court, coupled with the court=s decision to take judicial notice of
the same testimony, is problematic.  








Texas
Rule of Evidence 201 governs the trial court=s ability to take judicial notice of
adjudicative facts not subject to reasonable dispute.  See Tex. R. Evid. 201(b); Garza v. State, 996
S.W.2d 276, 279 (Tex. App.CDallas 1999, pet. ref=d).  A judicially noticed fact is not
subject to reasonable dispute if it is either (1) generally known within the
territorial jurisdiction of the trial court or (2) capable of accurate and
ready determination by resorting to resources whose accuracy cannot reasonably
be questioned.  Tex. R. Evid. 201(b). 
A trial court may take judicial notice of its own orders, records, and
judgments rendered in cases involving the same subject matter and between
practically the same parties.  Wilson v. State, 677 S.W.2d 518, 523
(Tex. Crim. App. 1984).  A court, however,  may not  take judicial notice of
records of another court.  Turner v. State, 733 S.W.2d 218, 222 (Tex.
Crim. App. 1987).  We decide this issue based on whether appellant=s prior testimony was capable of
accurate and ready determination by resorting to resources whose accuracy
cannot reasonably be questioned.  We make this determination in light of the
trial court=s pronouncement that it did not hear appellant, during his prior
testimony, deny the fact that his second statement was voluntary. 

The
issue of whether it is appropriate for a trial court to take judicial notice of
testimony from another defendant=s criminal trial in order to resolve
an issue in a later trial is complex.  The Dallas Court of Appeals held in Garza
v. State that a trial court erred when taking judicial notice of testimony
from a co-defendant=s separate trial, which was used to determine whether
evidence in the defendant=s trial was admissible, because the facts judicially noticed
were not capable of accurate and ready determination.  996 S.W.2d at 279B80.  In Garza, the facts
judicially noticed were vigorously disputed by the defendant at his trial.  Id.
at 280.  Judicial notice of facts should be justified by a high degree of
indisputability, and because the facts at issue here were not of that
character, the trial court erred in taking judicial notice of the testimony
from which those facts were derived.  See id. 








Assertions
made by an individual, even under oath, are generally not the type of facts
capable of accurate and ready determination by a source whose accuracy cannot
reasonably be questioned.  Id. at 279B80.  The facts necessary to support a
motion to suppress evidence are not facts a trial court should judicially
notice.  See Alvarez v. State, No. 03-01-00532-CR, 2002 WL 463278, at *1
n.1 (Tex. App.CAustin March 28, 2002, pet. ref=d) (not designated for publication)
(reasoning in part facts necessary to support a motion to suppress evidence
should be easily determinable with certainty).  While a court may take judicial
notice of the existence of the testimony in a co-defendant=s trial, a court may not take
judicial notice of the truth of the factual content of that testimony because
its accuracy can reasonably be questioned.  See Jackson v. State,
139 S.W.3d 7, 21  (Tex. App.CFort Worth  2004, pet. ref=d) (holding a court may judicially
notice the existence of an affidavit in its file, but it may not take judicial
notice of the truth of the factual contents contained therein).  In fact, an
outcome of the suppression hearing should have been a determination of the
facts and circumstances surrounding appellant=s second videotaped statement to
police, and had the court made such a determination, that determination would
have shed light on the accuracy of the factual content of appellant=s prior testimony.  Moreover, a fact
is not capable of accurate and ready determination simply because a trial judge
remembers a witness testified to the fact at trial.  Garza, 996 S.W.2d
at 280 (citing Wilson v. State, 677 S.W.2d 518, 524 (Tex. Crim. App.
1984) (holding the Afunction of judicial notice is not coextensive with the
personal knowledge of the individual judge@)).  Similarly in a civil context,
this court has held prior testimony may not be used in a later trial unless
that testimony is admitted into evidence at the later trial.  Villarreal v.
Sw. Distrib. Co., No. 14-95-00135-CV, 1996 WL 460195, at *2 (Tex. App.CHouston [14th Dist.] Aug. 15, 1996,
no writ) (not designated for publication); Traweek v. Larkin, 708 S.W.2d
942, 946B47 (Tex. App.CTyler 1986, writ ref=d n.r.e.) (rejecting trial court=s judicial notice of testimony from
another trial). 

Here,
the facts the trial court utilized to determine whether appellant=s second statement was made while he
was in custody are disputed by appellant. Contrary to the State=s assertion on rehearing, appellant
did not treat his prior testimony as if it had been admitted into evidence in
this case, and appellant did in fact object to the trial court=s taking








 judicial notice of his
prior testimony.[5]  The
testimony the trial court judicially noticed was inherently swayed towards the
viewpoint of opposing parties at Perez=s trial.  At Perez=s trial, appellant was questioned by
the prosecutor, who was the same prosecutor trying appellant=s case.  Appellant was also
questioned by Perez=s attorney, who, of course, was seeking to present appellant=s testimony in a light most favorable
to Perez.  Appellant did not have an opportunity to present the facts in the
light most favorable to himself at Perez=s trial.

Appellant=s prior testimony did not contain
adjudicative facts capable of accurate and ready determination that may have
been used by the trial court to decide whether appellant=s second statement was voluntary or
whether appellant was in custody and Miranda warnings were required. 
For the reasons stated, we hold the trial court erred in taking judicial notice
of appellant=s testimony at Perez=s trial for the purpose of ruling on appellant=s motion to suppress.

C. 
Custodial Interrogation








Appellant argues that he was in custody when his second
videotaped statement was made, and therefore, the police were required to give
him Miranda warnings.  See Miranda v. Arizona, 384 U.S. 436, 444,
86 S. Ct. 1602, 1612, 16 L. Ed.2d 694 (1966).  Article 38.22 of the Texas Code
of Criminal Procedure prohibits the use of an oral statement of an accused made
as a result of custodial interrogation unless an electronic recording is made
of the statement, Miranda warnings are given, and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warnings.  Tex.
Code Crim. Proc. Ann. art. 38.22 ' 3(a)(1)B(2) (Vernon
2005).  No warnings are
found anywhere in the transcript of appellant=s second videotaped statement, and
the State concedes no warnings were given. Therefore, the admissibility of
appellant=s second statement rests upon whether all or part of the second interview
was a custodial interrogation.

A person
is in Acustody@ if, under the circumstances, a
reasonable person would believe that his freedom of movement was restrained to
the degree associated with a formal arrest.  Dowthitt v. State, 931
S.W.2d 244, 254 (Tex. Crim. App. 1996).  The Areasonable person@ standard presupposes an innocent
person.  Id.  Moreover, the subjective intent of law enforcement
officials to arrest is irrelevant unless that intent is somehow communicated or
otherwise manifested to the suspect.  Id.  The Court of Criminal Appeals
has recognized four factors relevant to determining custody:

(1) probable cause to arrest,

(2) subjective intent of the police,

(3) focus of the investigation, and

(4)
subjective belief of the defendant.  

Id.  However, under Stansbury v.
California, 511 U.S. 318, 321B24, 114 S. Ct. 1526, 1528B30, 128 L.Ed.2d 293, 298B99 (1994), factors (2) and (4) have
become irrelevant except to the extent that they may be manifested in the words
or actions of law enforcement officials.  Dowthitt, 931 S.W.2d at 254.
The custody determination must be made on an ad hoc basis, after considering
all of the objective circumstances. Id. at 255.  Station house
questioning does not, in and of itself, constitute custody. Id. 
Further, custody does not occur merely because the suspect submits to and fails
a polygraph test.  Id.  However, the mere fact that an interrogation
begins as noncustodial does not prevent custody from arising later; a
consensual inquiry can escalate into custodial interrogation. Id.








The
Court of Criminal Appeals has outlined at least four general situations which
may constitute custody:  (1) when the suspect is physically deprived of his
freedom of action in any significant way, (2) when a law enforcement officer
tells the suspect that he cannot leave, (3) when law enforcement officers
create a situation that would lead a reasonable person to believe that his
freedom of movement has been significantly restricted, and (4) when there is
probable cause to arrest and law enforcement officers do not tell the suspect
that he is free to leave.  Id.  Concerning the first three situations, Stansbury
teaches that the restriction upon freedom of movement must amount to the degree
associated with an arrest as opposed to an investigative detention.  Concerning
the fourth situation, Stansbury instructs that the officers= knowledge of probable cause be
manifested to the suspect.  Id.  Such manifestation can occur if
information substantiating probable cause is related by the suspect to the
officers.  Id.  Furthermore, situation four does not automatically
establish custody;  rather, custody is established if the manifestation of
probable cause, combined with other circumstances, would lead a reasonable
person to believe that he is under restraint to the degree associated with an
arrest. Id.

Our custody analysis begins with a review of the objective
circumstances.  The complainant Amanda Garza was killed and found dead in the
early morning hours of Sunday, August 31, 2003.  The complainant was last seen
with appellant and Perez shortly before she was killed.  The complainant=s body was found
near appellant=s home. On the day the complainant was killed, police
officers located appellant and asked to speak with him.  Appellant agreed and
gave his first statement that he was present with Perez when Perez shot the
complainant.  After investigating appellant=s first statement,
the police officers asked appellant to take a polygraph test, which he took and
failed.  The police officers then wanted to question appellant further. 
Appellant agreed and started answering questions again, in what became his
second statement.  








During this interrogation, appellant stated for the first
time that he was the first one to shoot the complainant, firing at her one
time.  At no time during this interrogation did the law enforcement officers
tell appellant that he was free to leave. The record reflects that the
interrogation lasted twenty-three minutes and that the officers asked appellant
if he wanted to use the restroom at the end of the interrogation.  The State
concedes on appeal that appellant was arrested shortly after this second interrogation
during which he admitted shooting the complainant. Although not reflected by
the record that was before the trial court when it ruled on the motion to
suppress, appellant=s trial counsel conceded during the
suppression hearing that appellant was offered something to drink.  

During the second interrogation, appellant stated for the
first time that he was the one who first shot the complainant.  He did not
assert that he shot the complainant accidentally or otherwise indicate facts
that would arguably remove criminal liability.  When appellant made these
statements, there was probable cause to arrest appellant, yet the law
enforcement officers did not tell appellant that he was free to leave.  As
noted by the Dowthitt court, the officers did not have to tell appellant
that there was probable cause based on this statement by appellant; it is
enough that the information substantiating probable cause is related by the
suspect to the officers.  Dowthitt, 931 S.W.2d at 255B57.  Therefore,
this case falls under the fourth situation described in Dowthitt.  Id.
(stating and holding that statements by suspect creating probable cause are
sufficient to trigger the fourth situation, without requiring that officers
advise the suspect they believe there is probable cause); Ruth v. State,
645 S.W.2d 432, 436 (Tex. Crim. App. 1979) (same); Xu v. State, 100
S.W.3d 408, 413B15 (Tex. App.CSan Antonio 2002,
pet. ref=d) (same); Fielder
v. State, 991 S.W.2d 70, 81B83 (Tex. App.CSan Antonio 1998,
no pet.) (same); State v. Zamora, no. 14-96-00744-CR, 1997 WL 428470, at
*2B4 (Tex. App.CSan Antonio July
23, 1997, no pet.) (same) (not designated for publication); contra State v.
Rodriguez, 986 S.W.2d 326, 329 (Tex. App.CEl Paso 1999, pet.
ref=d) (stating that
suspect=s statements
creating probable cause are not enough and requiring that law enforcement
officers reveal to suspect that they have probable cause based on suspect=s statements). 








Presuming for the sake of this analysis that appellant was
innocent, he still knew that the complainant had been killed and found dead
near appellant=s home, in the early morning hours of Sunday, August
31, 2003.  The complainant=s dead body was found shortly after she
was seen getting into a car with appellant and Perez.  On the day the
complainant was killed, police officers located appellant and asked to speak
with him.  Appellant gave his first statement that he was with Perez when Perez
shot the complainant.  After investigating appellant=s first statement,
the police officers asked appellant to take a polygraph test, which he took and
failed.  Appellant then agreed to answer more questions, and during this second
interrogation, appellant stated for the first time that he was the first one to
shoot the complainant, shooting her one time.  The existence of probable cause,
the officer=s failure to tell appellant that he could leave, and
these other circumstances would lead a reasonable person in appellant=s position to
believe that he was under restraint to the degree associated with an arrest
after admitting that he was the first one to shoot the complainant.  See
Dowthitt, 931 S.W.2d at 255B57 (holding that circumstances showed
interrogation became custodial after appellant admitted he was present during
the murders, giving rise to probable cause and citing favorably the Ruth
court=s determination
that the interrogation in Ruth had become custodial); Ruth, 645
S.W.2d at 436 (concluding that suspect=s statement to
officer that he shot the complainant created probable cause and made the
interrogation custodial from that point on); Xu, 100 S.W.3d at 413B15 (concluding
that suspect=s statement to officer that he grabbed the complainantCwho had been
strangledCby the throat created probable cause and made the
interrogation custodial from that point on); Fielder, 991 S.W.2d at 81B83 (concluding
that suspect=s agreement with officer=s description of
events, which indicated that suspect murdered the complainant, created probable
cause and made the interrogation custodial from that point on); Zamora,
no. 14-96-00744-CR, 1997 WL 428470, at *2B4 (concluding that
suspect=s statement that
she shot the complainant created probable cause and made the interrogation
custodial from that point on). 








Because the interrogation of appellant was custodial from
the point after which appellant admitted he shot the complainant, the trial
court erred in denying appellant=s motion to
suppress this part of appellant=s statement based on appellant=s failure to
receive the required warnings from the law enforcement officers or waive his
rights.  See Tex. Crim. Proc. Code Ann. art. 38.22, ' 3; Ruth,
645 S.W.2d at 436; Xu, 100 S.W.3d at 413B15; see also
Wilkerson v. State, 173 S.W.3d 521, 527 n.16 (Tex. Crim. App. 2005) (noting
the purpose for the prophylactic measures mandated by Miranda was to
mitigate the inherent coerciveness of station house interrogations).

Having determined that the trial court erred in denying
appellant=s motion to suppress, we must decide whether this
error is reversible.  See Tex. R. App. P. 44.2.  The error in this case
violated appellant=s federal constitutional rights.  See
Xu, 100 S.W.3d at 415.  Further, the Court of Criminal Appeals has stated
that appellate courts are not to speculate as to an appellant=s reasons for
pleading guilty or as to whether appellant would have pleaded guilty if a
motion to suppress had been granted.  See McKenna v. State, 780 S.W.2d
797,799B800 (Tex. Crim.
App. 1989); Kraft v. State,762 S.W.2d 612, 613B15 (Tex. Crim.
App. 1988).  As long as the evidence that should have been suppressed Awould in any
measure inculpate the accused,@ this court must presume that the trial
court=s denial of
appellant=s motion to suppress influenced appellant=s decision to
plead guilty and is reversible error.  See McKenna, 780 S.W.2d at 799B800; Kraft,762
S.W.2d at 613B15.  Because some of the statements made by appellant
after the interrogation became custodial were Ain any measure@ inculpatory, we
presume the trial court=s erroneous denial of appellant=s motion to
suppress influenced appellant=s decision to plead guilty.  Therefore,
the error is reversible.

 

 

 

 

 








Accordingly, we reverse the trial court=s judgment and
remand for a new trial consistent with this opinion.

 

 

 

/s/        John
S. Anderson

Justice

 

Judgment rendered and Substitute Majority and
Concurring Opinions filed August 30, 2007.

Panel consists of Justice Anderson, Edelman and Frost.
(Frost, J., concurring.)

Publish C Tex. R. App. P. 47.2(b).









[1]  Miranda v. Arizona, 384 U.S. 436, 444, 86 S.
Ct. 1602, 1612, 16 L. Ed.2d 694 (1966). 





[2]  Perez was with the group at the club but did not
make it to the hotel afterwards, either because he was tired or because he got
separated from the group.  





[3]  The exact content of any audiotaped conversations
and their value to police is unclear.  Appellant claims he gave multiple tapes
to police on which Perez admitted shooting Garza.  The State alleges appellant
turned over only one tape, which contains no clear admissions by Perez that
would clear appellant of any involvement. 





[4]  Appellate courts in Texas have broad discretion to
address unassigned error in criminal cases.  Carter v. State, 656 S.W.2d
468, 469 (Tex. Crim. App. 1983).  AOnce
jurisdiction of an appellate court is invoked, exercise of its reviewing
functions is limited only by its own discretion or a valid restrictive statute.@  Id.; see also Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990); Guardiola v. State, 20 S.W.3d
216, 224 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d) (addressing unassigned error where fundamental
fairness and considerations of due process require the court to do so).  An
appellate court may be obligated to assign error and request briefing when
addressing novel constitutional issues, but many, if not most, errors prompting
sua sponte appellate attention need not be assigned.  Pena v. State,
191 S.W.3d 133, 136 (Tex. Crim. App. 2006).       





[5]  We find the following statements by appellant=s trial counsel adequate to preserve error regarding
the taking of judicial notice of appellant=s
testimony at Perez=s trial:

[counsel]:          Simply because Mr. Resendez
testified at Mr. Perez= trial, I don=t
think that we should be bootstrapped to say, therefore, the fact that you were
not Mirandized[,] there may have been some question with regard to the
voluntariness of your confession, therefore, we are simply going to overrule
your motion and allow the confession in.

*          *          *

[The Court]:      As I recall, I can take judicial
notice.  I tried the case.  There was never any complaint that this defendant
made on the stand or the officers that he had any problem with about any issue
or whether he was there freely, voluntarily, they coerced him, threatened him
or promised him anything.  I didn=t
hear any testimony of that whatsoever, so I will deny your Motion to Suppress
Mr. Resendez= statement.

[counsel]:          Just for purposes, obviously for
the record, we will take exception for purposes of appeal on this.