PD-0175-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/12/2015 6:20:10 PM
Accepted 2/13/2015 9:51:35 AM
ABEL ACOSTA
CLERK

# PD-0175-15

## PD NO. _____

GRANTED
PC 2/25/2015
(3-18-2015)

In The Texas Court Of Criminal Appeals
Austin,Texas

JOSE GUADALUPE MARTINEZ,

FILED IN
COURT OF CRIMINAL APPEALS

February 13, 2015

ABEL ACOSTA, CLERK

*Defendant-Appellant,*

vs.

THE STATE OF TEXAS,

*Plaintiff-Appellee.*

## MOTION FOR EXTENSION OF TIME TO FILE PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE TEXAS COURT OF CRIMINAL APPEALS, AUSTIN, TEXAS:

NOW COMES JOSE GUADALUPE MARTINEZ, by and through his undersigned attorneys, and pursuant to TEX.R.APP.P. 10.5(b), respectfully moves this Honorable Court for an extension of time, to Wednesday, March 18, 2015, to file his *Petition For Discretionary Review.* In support of this request, Mr. Martinez would show this Honorable Court as follows.

# I.

## Statement Of The Case

Petitioner Jose Guadalupe Martinez was charged in a Superseding Indictment with two counts of sexual assault of a child, in violation of TEX. PENAL CODE § 22.01. Mr. Martinez pleaded not guilty to the charges, and his trial began on October 22, 2012, in the 38th Judicial District with the Honorable Camille DuBose presiding. On October 25, 2012, the jury found Mr. Martinez guilty of each count. Mr. Martinez tried the question of his punishment to a jury which, on October 26, 2012, returned a punishment verdict recommending a 5-year term of confinement on Count One, and a 10-year term of confinement on Count Two. Judge DuBose entered judgment that same day, and ordered that the sentences be cumulated for a total term of 15 years' confinement in the Texas Department of Criminal Justice, Institutional Division.

On October 31, 2012, Mr. Martinez filed a timely Notice of Appeal. On October 29, 2014, the Fourth Court affirmed Mr. Martinez's convictions in an unpublished Memorandum Opinion. Mr. Martinez sought to petition the Fourth Court for rehearing. The Fourth Court set a due date of January 16, 2015, with no further extensions. On January 26, 2015, counsel sought to file a 37-page petition in the Fourth Court, accompanied by a motion for leave to file an oversized petition, and a motion for leave to file the petition out-of-time under TEX.

R. APP. P. 2 and 48.9.[1] The Court declined to exercise its discretion to permit the filing in an order entered January 28, 2015.

## II.

## Request For Extension Of Time To File
## A Petition For Discretionary Review

For the reasons which follow, counsel respectfully request a thirty-day extension of time, to Wednesday, March 18, 2015, to file a *Petition For Discretionary Review* in Mr. Martinez's behalf. This is Mr. Martinez's first request for an extension of time.

---

[1] On direct appeal, Mr. Martinez in two grounds argued that he was denied his Due Process right to present a defense at trial through the trial court's extreme limitations on cross-examination, limitations so severe that Mr. Martinez was deprived of his constitutional right to confront and cross-examine his accusers. These issues were fully preserved in the trial court. In its opinion of October 29, the Fourth Court declined to address Mr. Martinez's constitutional issues on the ground that counsel had not addressed each ruling of the trial court, pointing out how each ruling was "clearly erroneous." Counsel was unaware that there were any defects in her briefing, even through oral argument, where she argued Mr. Martinez's constitutional claims without any indication from the Court that there was a problem. The underlying trial record was long, lengthy proffers and bills of exception were made throughout, and the court's numerous rulings during the testimony of three witnesses were often on more than one ground. In the petition, counsel sought to remedy the defects described by the Court, and asked the Court to consider that the task was long and unusually difficult. Counsel required 37 pages to identify each ruling of the trial court, and to explain how each ruling was clearly erroneous, usually on more than one basis.

3

## III.

### Basis Of Request

As so often seems to happen, all of counsel's briefing obligations have due dates within the next two weeks. Counsel has an opening brief due tomorrow, February 13, 2015, in *United States v. Jose Rangel*, Appeal No. 14-50815, which she is just completing. Counsel has two state appellate cases, with opening briefs due on March 2, 2015. *Andres Solis Vielma vs. State of Texas*, Appeal No. 04-14-00742-CR; and *David Charles vs. State of Texas*, Appeal No. 04-14-00761-CR. Both have long records. Counsel hopes to complete Mr. Vielma's opening brief for filing on that date. We believe that one volume Mr. Charles's record may not have been transcribed.

In seeking discretionary review, Mr. Martinez will ask for relief on the merits of his case, but will also seek a remand to the Fourth Court under TEX. R. APP. P. 45.1, as his substantial constitutional claims were not addressed there.

### PRAYER

FOR ALL OF THESE REASONS, JOSE GUADALUPE MARTINEZ respectfully prays that this Honorable Court will grant him an extension of time to Wednesday, March 18, 2015, to file his *Petition For Discretionary Review*.

Respectfully submitted,

NANCY B. BAROHN
1202 South Alamo Street
San Antonio, Texas 78210
(210) 226-4263
(913) 302-6708 (cell phone)
Texas Bar Number: 01796500
nbb@airmail.net

MEGAN V. COOK
Cook and Cook Law Firm
115 East Travis, Suite 1620
San Antonio, Texas 78205
(210) 271-2800
Texas Bar Number: 24065072
cookandcooklaw@gmail.com

*Attorneys for Mr. Jose Guadalupe Martinez,*
*Petitioner-Appellant*

By: __/s/: NANCY B. BAROHN_____
NANCY B. BAROHN

5

## CERTIFICATE OF SERVICE

I certify that I served a true and correct copy of the foregoing motion by prepaid, first-class, United States mail on:

Mr. Danny Kindred
District Attorney for the
  38th Judicial District
3102 Avenue G
Hondo, Texas 78861

Mr. Edward Shaughnessy, III
Attorney at Law
206 East Locust Street
San Antonio, Texas 78212

&ndash; on this the ___12th___ day of February, 2015.

           _/s/:_    NANCY B. BAROHN_____
           NANCY B. BAROHN

6





# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00739-CR

Jose Guadalupe **MARTINEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2010-1132-DR
The Honorable Camile G. Dubose, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 29, 2014

AFFIRMED

Jose Guadalupe Martinez appeals his convictions for sexual assault of a child. He contends the trial court erred by denying his motion to suppress his oral and written confessions, erred in refusing to submit his requested instruction on the voluntariness of those confessions, and violated his due process right to present a meaningful defense. He also asks this court to determine whether certain records that were submitted to the trial court in camera and subsequently sealed contained *Brady* material. We affirm.

## BACKGROUND

When he was sixteen-years old, the complainant made an outcry to a counselor about two instances of sexual conduct with Martinez. The outcry occurred at a facility called Pathways, a juvenile treatment center where behavioral and psychological issues are addressed. The outcry was reported to the Real County Sheriff, who determined that his office should not lead the investigation because he was a personal friend of the complainant's family and Martinez's family. Instead, he asked Wayne Springer, an investigator with the Real County District Attorney's office to lead the investigation. In a forensic interview observed by Springer, the complainant told the interviewer that he had engaged in oral sex with Martinez on two occasions.

Sheriff Brice called Martinez and asked him to meet with Springer at the courthouse for an interview. Martinez was not informed of his *Miranda* rights or his rights under the Texas Code of Criminal Procedure prior to this interview. During the interview, Martinez told Springer of three instances of sexual conduct with the complainant. The first instance Martinez reported occurred at Martinez's shop. Martinez said the complainant performed oral sex on him. After this admission, Martinez reported a second instance that occurred when Martinez's family and the complainant's family were vacationing together. Martinez said the complainant began to perform oral sex on him but Martinez interrupted and stopped it. Martinez also reported a third instance that occurred at the complainant's house. Martinez said the complainant again performed oral sex on him, and Martinez then penetrated the complainant's anus with his penis. At the end of the interview, Springer gave Martinez the *Miranda* and Texas statutory warnings and then asked Martinez to reduce his oral statements to writing. Martinez did so, and Springer arrested him.

Martinez was charged with two counts of sexual assault against a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (West 2011). One count alleged Martinez intentionally or knowingly caused the penetration of the complainant's mouth with Martinez's sexual organ. *See id.*

- 2 -

§ 22.011(a)(2)(B). The other count alleged Martinez intentionally or knowingly caused the penetration of the complainant's anus with Martinez's sexual organ. *See id.* § 22.011(a)(2)(A). The jury convicted Martinez and assessed his punishment at five years' imprisonment for the first count, and ten years' imprisonment for the second count. The trial court ordered Martinez to serve his sentences consecutively.

## MOTION TO SUPPRESS

Martinez contends the trial court erred by denying his motion to suppress all oral and written statements stemming from the interview with Springer. He argues the oral statements should be suppressed because they were the product of a custodial interrogation and he was not given the warnings required by *Miranda v. Arizona* and article 38.22 of the Texas Code of Criminal Procedure prior to the interview. Martinez also argues his written statements should have been suppressed, even though he was given the required warnings before making them, because those statements were the product of a two-step interrogation process designed to circumvent the requirements of *Miranda* and state law.

Under the Fifth Amendment, statements made by a suspect during a custodial interrogation are inadmissible unless certain warnings were given to the suspect before he makes those statements. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966); *see* U.S. CONST. amend. V. Article 38.22 of the Texas Code of Criminal Procedure also requires the suppression of statements made during a custodial interrogation unless certain statutorily prescribed warnings are given. TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The police cannot evade the requirements of *Miranda* by engaging in a deliberate two-step interrogation process, whereby the police elicit unwarned statements from a suspect and then elicit the same statements after giving the suspect the required warnings. *Missouri*

- 3 -

*v. Seibert*, 542 U.S. 600, 614–17 (2004) (plurality op.); *id.* at 620–22 (Kennedy, J., concurring in judgment); *Carter v. State*, 309 S.W.3d 31, 38 (Tex. Crim. App. 2010).

When seeking the suppression of unwarned statements, the defendant bears the burden to prove a statement was the product of a custodial interrogation. *Herrera*, 241 S.W.3d at 525; *see Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009) ("Appellant has failed to establish that he was in custody during the telephone conversation."). A suspect is in "custody" for *Miranda* purposes if a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest under the circumstances of the interrogation. *Herrera*, 241 S.W.3d at 525. This "reasonable person" standard presupposes an innocent person. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The Court of Criminal Appeals treats the requirement of "custody" under *Miranda* consistently with the requirement of custody under article 38.22. *Herrera*, 241 S.W.3d at 526.

Two discrete inquiries are necessary for a custody determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Id.* at 532. "The determination of custody must be made on an ad hoc basis, after considering all of the (objective) circumstances." *Dowthitt*, 931 S.W.2d at 255. A suspect may be in custody if there is probable cause to arrest and law enforcement officers do not tell him he is free to leave. *Id.* The officer's knowledge of probable cause must be manifested to the suspect and "[s]uch manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Id.* "[C]ustody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Id.*; *see State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (holding the duration of an interrogation and the exercise of

- 4 -

control over a suspect during an interrogation are circumstances that, when combined with a manifestation of probable cause, may establish an interrogation was custodial).

The trial court's ultimate "custody" determination presents a mixed question of law and fact. *Herrera*, 241 S.W.3d at 526. Therefore, we afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id.* at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a "custody" determination de novo. *Id.* at 527. If the trial court's determination does not turn on credibility or demeanor, we apply "(1) a deferential standard of review to the trial court's factual assessment of the circumstances surrounding the interrogation, and (2) a de novo review to its ultimate legal determination that appellee was in custody." *Saenz*, 411 S.W.3d at 494. "[A] question 'turns' on credibility and demeanor 'when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue.'" *Id.* (quoting *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013)).

Martinez argues that his entire interview with Springer was custodial because Martinez knew he was the focus of an investigation and because Springer had probable cause to arrest him at the beginning of the interview based on the complainant's forensic interview. In the alternative, Martinez argues the interview became custodial at the moment he admitted to the first sexual act with the complainant because that was a pivotal admission establishing probable cause to arrest. *See Ruth v. State*, 645 S.W.2d 432, 436 (Tex. Crim. App. [Panel Op.] 1979). While it is true that a suspect's "pivotal admission" can be a manifestation of probable cause to arrest, *see Dowthitt*, 931 S.W.2d at 256–57, such a manifestation is not sufficient to show Martinez's interrogation was custodial without the existence of other factors. *See Saenz*, 411 S.W.3d at 496; *Dowthitt*, 931 S.W.2d at 255; *Trejos v. State*, 243 S.W.3d 30, 46–47 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("We conclude that appellant's statements made during the initial interview . . . provided

- 5 -

sufficient probable cause to arrest him. . . . However, we conclude that the other circumstances present, when viewed in a light most favorable to the trial court's ruling, are sufficient to show that he was not in custody.").

The trial court's findings of fact support the trial court's conclusion that Martinez was not in custody during the interview with Springer for several reasons. First, the trial court found that there was no evidence that Martinez was coerced to be at the interview and that the interview between Martinez and Springer was "voluntarily initiated." *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) (holding defendant's interrogation noncustodial where he voluntarily came to the police station, was informed he was not under arrest, was questioned for a half hour, and left the station afterwards). Second, the trial court found the entire interview lasted only fifty minutes and the time between the beginning of the interview and Martinez's first admission to sexual conduct with the complainant was twelve minutes. *See id.*; *cf. Dowthitt*, 931 S.W.2d at 256– 57 (holding twelve hours between start of defendant's interrogation and his incriminating admission was a factor supporting conclusion defendant was in custody). Third, the trial court found there was no evidence that Martinez was physically prevented from leaving or that Martinez's freedom of movement was restricted in any way during the interview. *Cf. Dowthitt*, 931 S.W.2d at 256–57 (holding the fact that the defendant was accompanied by police officers on trips to the restroom and the fact that the police ignored the defendant's requests to talk with his wife were factors supporting conclusion defendant was in custody).

We hold Martinez failed to meet his burden to establish he was in custody when he made his oral and written statements to Springer. Because Springer was not obligated to give Martinez any warnings during the interview, *Miranda* and article 38.22 did not require the suppression of his oral statements. Furthermore, because Springer was not required to give warnings at any time during Martinez's noncustodial interrogation, we need not consider whether Martinez's written

statements were the product of a two-step interrogation process designed to evade the requirements of *Miranda*.

## JURY CHARGE

At the charge conference, Martinez requested a jury instruction on the general voluntariness of his statements under article 38.22, section 6 of the Code of Criminal Procedure. (TEX. CODE CRIM. PROC. art. 38.22, § 6.) The trial court did not submit a section 6 instruction.

Section 6 is essentially independent of the other sections contained within Article 38.22, and it sets out the procedures for litigating voluntariness claims in all cases where a question is raised as to the voluntariness of a statement of an accused. *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008); *State v. Terrazas*, 4 S.W.3d 720, 724 (Tex. Crim. App. 1999). Claims of involuntariness under Article 38.22 can be, but need not be, predicated on police overreaching, and they could involve "sweeping inquiries into the state of mind of a criminal defendant who has confessed." *Oursbourn* 259 S.W.3d at 172. "Under Articles 38.21 and 38.22 and their predecessors, fact scenarios that can raise a state-law claim of involuntariness (even though they do not raise a federal constitutional claim) include the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights; (3) the suspect "lacked the mental capacity to understand his rights"; (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into 'for questioning by several persons armed "with six-shooters.""" *Id.* at 172–73 (internal citations omitted). A defendant is entitled to a general voluntariness instruction if he has raised a question of the voluntariness of his statement and a

reasonable jury could find that the facts, disputed or undisputed, rendered the defendant unable to make a voluntary statement.[1] *Id.* at 176.

Martinez argues he was entitled to his requested instruction because there was evidence at trial that Springer lied to Martinez and made false promises during the interview and there was evidence he was "suicidal" at the end of the interview. He also argues that he suffered some harm from the trial court's refusal to submit the instruction.

At trial, Springer admitted that he lied to Martinez during the interview and basically told him that he would not be in trouble so long as any sexual encounters with the complainant were consensual. Although the Court of Criminal Appeals has not explicitly ruled on the question, it has indicated that a police officer's lies during an interview are not evidence supporting a section 6 instruction. *See Oursbourn*, 259 S.W.3d at 181–82 (considering evidence the defendant was lied to by the police about the evidence against him in the context of an article 38.23 instruction, but not an article 38.22 general voluntariness instruction). Martinez does not provide any authority that the lies told by Springer demonstrate the kind of police overreaching that can support the submission of a general voluntariness instruction under state law.

Martinez also argues that Springer's testimony showed Martinez's mental state was affected because he was "suicidal." Springer testified that at the end of the interview he asked Martinez what should be done to someone who does things like this. Martinez replied they should be severely punished. Springer testified he thought that this response was shocking and unusual, and he decided to arrest Martinez at that time because he thought he might hurt himself or

---

[1] The State argues the trial court did not err in denying the instruction because the interview was noncustodial. We reject this argument because the Court of Criminal Appeals has held that section 6 "applies to both an accused's custodial and non-custodial statements because it provides that only 'voluntary' statements may be admitted." *Oursbourn*, 259 S.W.3d at 171; *see also Terrazas*, 4 S.W.3d at 727 (overruling prior precedent limiting section 6's applicability to custodial statements).

somebody else. On cross-examination, Springer expressly declined to characterize Martinez as suicidal at the end of the interview. We conclude Springer's testimony was insufficient evidence from which a reasonable jury could determine Martinez's statements were involuntarily made. *Cf. Oursbourn*, 259 S.W.3d at 181 (holding general voluntariness instruction should have been submitted where evidence showed defendant was initially declared incompetent to stand trial two weeks after his interrogation and confession, a psychologist testified defendant was manifesting symptoms of his bipolar disorder during interrogation, and defendant's mother testified defendant was in a "manic" state shortly before and after his arrest).

We hold Martinez was not entitled to a general voluntariness instruction.

## DUE PROCESS

In his first two issues for review, Martinez complains the trial court erroneously restricted his examination of three witnesses and the trial court's restrictions were so severe that his constitutional right to present a meaningful defense under the Sixth and Fourteenth Amendments was violated.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). "[T]here are two distinct scenarios in which rulings excluding evidence might rise to the level of a constitutional violation: 1) a state evidentiary rule which categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence which is vital to his defense; and 2) a trial court's clearly erroneous ruling excluding otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002)

(internal citations and quotation marks omitted). "In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself." *Id.* "In the second category, the rule itself is appropriate, but the trial court erroneously applies the rule to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory." *Id.* "In other words, the erroneous ruling goes to the heart of the defense." *Id.*

Martinez complains that the trial court prohibited him from asking any witness about any specific instances of the complainant's conduct or background, from asking any questions to show the context in which the complainant's outcry was made, from asking any questions to rebut the false impressions of the circumstances surrounding the complainant's outcry, and from exploring any matter which would show the complainant's bias, motive, or self-interest at the time of the outcry except through general character questions. Martinez's complaint applies to his cross-examination of the complainant and the complainant's father. It also applies to his direct examination of his own witness—namely, the person to whom the complainant made his outcry.

Martinez's brief contains a summary of the proffer hearings for all three witnesses and the trial court's reasons for excluding the evidence. Martinez does not argue that any state evidentiary rule arbitrarily deprived him of the opportunity to offer otherwise relevant and reliable evidence that was vital to his defense. Instead, Martinez appears to argue the trial court erred in every ruling it made during the proffer hearings and that these erroneous rulings prevented him from presenting a meaningful defense.

Martinez, however, does not explain why each ruling made by the trial court was "clearly erroneous." Instead, he cites and discusses authority for broad evidentiary propositions that evidence of a witness's bias or motive, evidence to correct a false impression, and contextual evidence are admissible. Although some of Martinez's proffered evidence may have been admissible to show bias or motive or for some other evidentiary purpose, that alone does not

establish that the trial court clearly erred by excluding the evidence. *See Delaware v. Van Arsdall,* 475 U.S 673, 679 (1986) (holding a trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Hammer v. State,* 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) ("Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules" and "[t]hus, most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence."). Many of the trial court's rulings were based on its conclusions that the proffered evidence was not relevant or was otherwise barred under other evidentiary rules such as Rule 403, Rule 404, or Rule 608. But Martinez fails to argue or explain how each one of the trial court's rulings excluding his proffered evidence was "clearly erroneous"—a necessary prerequisite to prevail on his due process claim. *See Wiley,* 74 S.W.3d at 406. We hold Martinez has failed to present his due process argument in a way that would allow this court to conclude his constitutional right to present a meaningful defense was violated. *See Allen v. State,* No. 14-12-01086-CR, 2014 WL 3587372, at *8 (Tex. App.—Houston [14th Dist.] July 22, 2014, pet. filed) (mem. op., not designated for publication) ("*Wiley* is of no assistance to appellant as appellant has not established that the trial court clearly erred when it sustained the State's hearsay objection to this testimony.").

## SEALED RECORDS

Finally, Martinez asks this court to examine certain sealed records for *Brady* material. *See Brady v. Maryland,* 373 U.S. 83 (1963) (holding the State has a duty to disclose material exculpatory evidence to the defense). Those records contain the complainant's medical records from Laurel Ridge Hospital where he stayed after the sexual encounters but before his outcry. The

State offered the records to the trial court for an in camera inspection. The trial court inspected the records and determined they did not contain *Brady* material. We have examined the records, and we hold the trial court correctly determined that there is no information in those records which *Brady* would have required the State to disclose.

## CONCLUSION

We affirm the trial court's judgments on each count.

Luz Elena D. Chapa, Justice

Do Not Publish